[Civ. No. 18663.   Second Dist., Div. One.   Apr. 2, 1952.]

ROBERT B. GRAVES et al., Respondents, v. BAZYL SMOLICZ, Appellant.

Joseph Friedman and Newton Kalman for Appellant.

Norman Newmark for Respondents.

DORAN, J.—The present appeal is from a judgment canceling on the ground of fraud, a real estate transaction between the parties whereby Robert B. Graves and wife, respondents herein, purportedly purchased from the appellant Smolicz certain real estate on Sunset Boulevard in Los Angeles referred to as Parcel II, and adjoining Parcel I owned by respondents.

On July 19, 1949, the parties opened an escrow for the purchase by respondents of Parcel II at a total purchase price of $107,056.34. The sale was made without a down payment; respondents agreeing to assume a first trust deed in the sum of $22,056.34 in favor of Harris E. Newton and wife, and executing a purchase money trust deed for $85,000 to Smolicz, covering Parcel II. Appellant paid all expenses of the escrow.

Previous to the escrow transaction, in 1946, Smolicz had leased the Graves property, Parcel I, completed a building

on the front part thereof which was subleased as a restaurant to one Schneider. Smolicz had purchased the adjoining Parcel II in 1945 for $27,500, changed a residence thereon into an office building, and built a new office building at the front of Parcel II. The rear portion of the Smolicz property and the contiguous part of the Graves Parcel I, were used as parking space by the House of Westmore.

At the time the escrow was opened for respondents' purchase of the Smolicz Parcel II, the Newton trust deed thereon required payment of $200 per month. The second trust deed to Smolicz required payment by the Graveses of $750 per month. In order to handle these monthly payments, and at Smolicz' suggestion, a bank account was opened at the Bank of America in Graves' name, the bank being instructed to pay from said account the monthly payments totaling $950. The initial deposit therein of $956 was made by Smolicz, purportedly representing rental collections made by Smolicz for Graves, in the amount of $815 plus cash in the sum of $141. All succeeding deposits were likewise made by appellant in a similar manner. Appellant continued to manage the property for Graves, channeling the rental payments through the account as hereinbefore described.

According to appellant's brief, "The respondents fell behind in their payments to the appellant herein during the months of March and April, 1950, and on April 26, 1950, the appellant caused to be recorded . . . a document referred to herein as 'additional security agreement,' dated and acknowledged on July 19, 1949, wherein and whereby respondents transferred to the Title Insurance and Trust Company as trustee, for the benefit of appellant, as beneficiary, respondents' own property, to-wit, Parcel I, as additional security for the above described $85,000.00 note and trust deed." Respondents deny any knowledge of such "additional security agreement."

On June 14, 1950, appellant caused a notice of default to be recorded seeking a sale of Parcel II, and on June 19, 1950, respondents filed the present action seeking an injunction against the proposed trust deed sale, and praying for cancellation of the deed covering Parcel II and of the $85,-000 trust deed and note on the ground of fraud. Neither the original complaint nor appellant's answer thereto mentions the "additional security agreement" covering Graves' Parcel I, and respondents claim not to have had even "the slightest intimation that there was any such thing . . . or

that their own property was in any way involved.''

The trial was set for October 23, and according to the respondents' brief, in September, 1950, during a conversation between Mr. Newmark and Mr. Friedman, attorneys for respondents and appellant respectively, Mr. Newmark pointed out that in any event, since the instrument in question was a purchase money trust deed, under section 580b of the Code of Civil Procedure, no deficiency judgment could be obtained. At that time appellant's attorney advised Mr. Newmark of the existence of the ''additional security agreement'' or trust deed covering the Graves' Parcel I. A photostat of the document was exhibited to the Graveses, and it is claimed, ''marked the first time they had seen the document.''

The ''additional security agreement'' bore a notarial acknowledgment of July 19, 1949, the notary being the escrow agent and that being the date of the escrow. This document was not, however, a part of the escrow, and was not recorded by appellant until April 26, 1950. There was evidence that the document was not acknowledged on July 19, 1950, but that the notary had later placed such date thereon to correspond with the escrow date. Upon learning of this document, the complaint and answer were duly amended, it being respondents' contention that the instrument was part and parcel of an entire fraudulent transaction. As hereinbefore indicated, the trial court found in favor of respondents.

It is contended in appellant's brief that the judgment should be reversed for the reason that ''When the terms of an agreement have been reduced to writing, the parol evidence rule excludes, between the parties to the agreement, extrinsic evidence varying the terms of the writing,'' and that therefore in this case, ''Parol evidence· is inadmissible to prove that appellant promised to cancel and rescind all documents executed by respondents in connection with their purchase of Parcel II.'' Appellant further argues that ''There is no substantial evidence, as a matter of law, to support the trial court's finding that the additional security agreement was a forgery''; also, that the trial court refused to grant a new trial upon the grounds of newly discovered evidence, and insufficiency of the evidence.

The appellant's contention regarding the parol evidence rule is predicated upon respondents' allegation that appellant had orally represented that the documents executed would be deemed ''nullities and of no force or effect,'' and

that the transaction was entered into with appellant's assurance "that he, the said Smolicz, would at any time 'straighten out' said transaction," although appellant then "intended to take the position, at some time in the future, whenever it would serve his purpose so to do, that said transaction was a *bona fide* transaction."

Cited in support of appellant's position is *Cobbs* v. *Cobbs*, 53 Cal.App.2d 780 [128 P.2d 373], where, in order to induce plaintiff to enter into certain contracts, it was alleged that the defendant wife promised "that she would not remarry, that in the event she did so she would cancel both of the agreements, and relieve plaintiff from the payments called for." Refusing to cancel the agreements, the reviewing court held, in the language of the headnote, that "Parol evidence of fraud to establish the invalidity of a written instrument induced by a promise made without any intention of performing it is only permissible in the case of a promise to do some additional act which was not covered by the terms of the contract, and not in the case of a promise directly at variance with the terms of the instrument."

Respondents' brief answers this argument by calling attention to the fact that the gravamen of respondents' claim and the basis of the findings and judgment "is that there has never been any agreement at all between appellant and respondents for the purchase of the Smolicz property, and that the escrow instructions and all documents executed in connection therewith were sham and were never intended to, and did not create any contractual obligations at all between them." Appellant's promise to "straighten out" the transaction was, say the respondents, "but part of the evidence relied upon to show its sham nature." And, as a part of the entire fraudulent transaction, the so-called "additional security agreement" was found to be a forgery.

Appellant's argument in reference to the parol evidence rule is untenable so far as the present litigation is concerned. ■ The instant case is governed by the rule as stated in *Cooper* v. *Cooper*, 3 Cal.App.2d 154, 158 [39 P.2d 820], and elsewhere, namely, that "Oral evidence is competent to prove that a purported promissory note or written contract was executed as a mere artifice affecting the relationship or conduct of the parties thereto, and that it was not the intention of the parties that it should become binding upon them. Under such circumstances the reception of

oral evidence does not have the effect of varying the terms of the written instrument, but rather tends to prove the invalidity of the challenged document."

█ Section 1856 of the Code of Civil Procedure, stating the parol evidence rule, specifically excludes from its operation cases "where the validity of the agreement is the fact in dispute." Indeed, any other concept would effectively prevent a party from showing fraud, illegality or other facts rendering a written instrument of no legal force. The parol evidence rule would then become an effective aid in the perpetration of fraud; by procuring a victim's signature, the perpetrator would automatically foreclose the interposition of such valid defenses. Such is not the office of the parol evidence rule which, like the statute of frauds, was designed to prevent rather than to aid such nefarious transactions.

The action herein was one for cancellation of all documents relating to the purported sale. █ The trial court found that the entire transaction was invalid and that the respondents had been fraudulently induced to become parties thereto. Under the well known and usual rule of appellate review, such findings and judgment must be affirmed if there exists substantial evidence in support thereof. Appellant avers that there is no such substantial evidence.

The conflicting claims of the parties required a judicial determination of factual issues as to whether the alleged sale was what it purported to be or a mere sham transaction maneuvered for appellant's benefit, and whether the "additional security agreement" was a valid or spurious document. This situation manifestly required the trial court to pass upon the credibility of parties and witnesses, to resolve sharply conflicting evidence, and to consider and draw reasonable inferences from the surrounding circumstances. That the record discloses substantial evidence in support of the findings and judgment cannot well be doubted.

There was evidence, for example, that in May or June, 1949, Smolicz informed Graves, a retired man, aged about 72 years, that appellant had a prospect for the sale or trade of the Smolicz lot and that it would be advantageous if the property could be put in Graves' name so that Smolicz could deal with the property as an agent.

The Graveses were informed that there would be no expense or liability connected therewith and that Smolicz would continue to manage the property as in the past. Respondents had no previous knowledge of what the purported price

would be, the amount of the trust deed, or the rental income. Smolicz made the escrow arrangements, had the papers prepared in advance, and paid all expenses. Appellant likewise fixed the amount of the trust deed at such a large amount as to cause Graves to say, "Well, you certainly made your mortgage large enough. Do you want it that large? What's the idea?" There was evidence that the purported sale price of $107,056.34 was greatly in excess of the reasonable market value of the Smolicz property which was estimated at $60,000.

Graves testified to having signed three different papers concerning Smolicz' collection of rentals, etc., of which two were unaccounted for. Respondents kept no copies of the documents but were certain that no "additional security agreement" was ever knowingly executed. This latter document was made up of three pages, and although bearing genuine signatures, was found to be a forgery in the sense that the signatures were procured by "fraud, trick and device."

The fact that the notarial acknowledgment thereon was knowingly false at least in respect to the date, has already been referred to. There was expert testimony that the signature page had been tampered with and bore evidence of alteration; the page had "been typed under two or possibly three typing operations"; erasures had been made and there had apparently been an attempt to make the document look as if it had been prepared in one typing operation.

It is claimed by appellant that the evidence of fraud was "shadowy," and that the expert testimony of Clark Sellers, hereinbefore referred to, "represents no more than shadowboxing with the additional security agreement"; that consequently the findings of fraud are unsupported. This argument is untenable, and as hereinbefore indicated, the evidence before the trial court and legitimate inferences therefrom, substantially support the findings. That the record discloses contrary and conflicting evidence does not change the situation.

The judgment is affirmed, and the attempted appeal from the order denying a new trial is dismissed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 21, 1952, and appellant's petition for a hearing by the Supreme Court was denied May 29, 1952.