[Civ. No. 19027. Second Dist., Div. Two. July 21, 1952.]

JOSEPH MAZIROW et al., Respondents, v. MIRIAM RITNER, Appellant.

Grudd & Grossman for Appellant.

Walley & Davis and Milton Davis for Respondents.

McCOMB, J.—From a judgment in favor of plaintiff after trial before the court in an action to recover damages for breach of a contract to sell a food market, defendant appeals.

Defendant's sole contention is that the findings are not supported by the evidence.

This proposition is devoid of merit. ▮ The findings and judgment based thereon must be affirmed if there is any substantial evidence in support thereof. (*Graves* v. *Smolicz*, 110 Cal.App.2d 221, 225 [3] [242 P.2d 371].)

▮ The power of the appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence, contradicted or otherwise, which will support the findings of the trial court. (*McKee* v. *Mires*, 110 Cal.App. 2d 517, 518 [242 P.2d 954].)

Applying the foregoing rules to the findings in the instant case a review of the record discloses the following:

### FINDINGS

#### I

"*That the plaintiffs and the defendant, Miriam Ritner, were, at all times mentioned in the pleadings filed in this action, residents of the County of Los Angeles, State of California.*"

This finding is admitted by defendant's failure to deny it in her answer.

#### II

▮ "*That by an instrument in writing, which instrument was received in evidence in this action as plaintiffs' Exhibit 4, plaintiffs did on October 2, 1948, make an offer to the defendant, Miriam Ritner, to purchase the Century Market, located at 6001 South Broadway, Los Angeles, Cali-*

fornia, for the sum of $5,000.00, plus stock at current whole-sale prices, and that said offer was communicated by plaintiffs' representative, Charlotte Haagen, to the defendant, Miriam Ritner, on October 2, 1948.''

This finding is supported by plaintiffs' Exhibit 4, which contains the terms of the offer made by plaintiffs, together with the alterations which were initialed by all parties plus the testimony of Charlotte Haagen, hereinafter referred to as the broker, that she saw defendant who made the offer to her, let her read it and discussed the proposition with her. She told defendant she held plaintiffs' check in the sum of $500 as a deposit.

### III

''That the defendant, Miriam Ritner, rejected plaintiffs' said offer and did on the same day, to-wit: October 2, 1948, make a counter-offer in writing, set forth in and upon the said Exhibit 4, to sell said Century Market to the plaintiffs for the sum of $7,500.00, plus stock at current wholesale prices, by striking from said Exhibit 4 the purchase price of $5,000.00 set out therein by plaintiffs, and inserting in place and stead thereof, the selling price of $7,500.00, and by thereafter affixing her signature to said writing and initialing said changes therein, and by then delivering said writing to plaintiffs' said representative, Charlotte Haagen, with the intention and purpose that said Charlotte Haagen communicate defendant's said counter-offer to the plaintiffs.''

This finding is amply supported by plaintiffs' Exhibit 4, plus the broker's testimony that on October 2, 1948, she discussed the offer and counteroffer with the defendant and at such time the changes in price were made in Exhibit 4 and were initialed. In addition, the broker testified that defendant at such time said if the counteroffer was accepted she was ready to go into escrow. Also, defendant admitted having initialed the changes on Exhibit 4 and having affixed her name at the bottom of the instrument.

### IV

''That all writing appearing on plaintiffs' said Exhibit 4, at the time it was received in evidence in this action, with the exception of the initials of one of the plaintiffs, Barnet Mazirow, was contained on and appeared in said Exhibit 4 when it was returned and delivered to the said Charlotte Haagen by the defendant, Miriam Ritner, on October 2, 1948, as aforesaid.''

The broker gave direct testimony in support of each fact in the foregoing finding, which sustains it.

## V

██ *"That said counter-offer of the defendant, Miriam Ritner, was communicated by said Charlotte Haagen to plaintiffs on the same day, to-wit: October 2, 1948, and plaintiffs then and there on said 2nd day of October, 1948, accepted the counter-offer of the defendant, Miriam Ritner, to sell the said Century Market to the plaintiffs for the said sum of $7,500.00, plus stock at current wholesale prices, and that said acceptance by plaintiffs was within a reasonable time thereafter, to-wit: four days, communicated to the defendant, Miriam Ritner."*

The broker testified that after leaving defendant's place of business she contacted plaintiffs and showed them the counteroffer of defendant; that plaintiffs initialed the changes on Exhibit 4 and accepted the counteroffer, permitting the broker to retain the deposit check previously given her as a deposit on the counteroffer. She further testified that as soon as she was able to contact defendant she communicated to her the fact that plaintiffs had accepted her counteroffer. This testimony supports the finding.

## VI

*"That it is true that plaintiffs and the defendant, Miriam Ritner, made and entered into a written agreement as aforesaid, wherein and whereby said defendant agreed to sell to the plaintiffs, and the plaintiffs agreed to purchase from said defendant, said Century Market at and for the sum of $7,500.00, plus stock at current wholesale prices, and that notwithstanding said defendant having made and entered into said agreement as aforesaid, said defendant thereafter failed and refused to consummate said sale and repudiated said agreement and thereafter agreed to sell and did sell said Century Market to her husband, Louis Ritner, instead, from which husband she was then separated."*

The foregoing finding with the exception of the statement that defendant after repudiating her agreement to sell to plaintiffs sold the market to her husband, is fully supported by the testimony herein set forth.

The portion of the finding relative to the sale of the market to defendant's husband is supported by a stipulation entered into by the parties in the trial court that such was the fact.

## VII

■ *"That on the 2nd day of October, 1948, said Century Market was of the reasonable market value of $10,000.00, exclusive of stock."*

The broker testified that on October 2, 1948, the market was worth a minimum of $10,000 and a maximum of $13,000 and the finding is thus supported by the evidence.

## VIII

*"That plaintiffs purchased said Century Market from the aforementioned Louis Ritner on November 19, 1948, and obtained possession thereof on November 29, 1948."*

The parties stipulated in open court that plaintiffs purchased the market from Louis Ritner, husband of defendant, on November 19, 1948.

One of the plaintiffs testified that plaintiffs obtained possession of the market on November 29, 1948, which supports the finding.

## IX

*"That plaintiffs were prevented by said actions of the defendant, Miriam Ritner, from obtaining possession of the Century Market at all times until the plaintiffs purchased said Century Market from said Louis Ritner and received possession thereof from him as aforestated, but plaintiffs suffered no damages by way of loss of profits as a result of having been so prevented from obtaining possession of the Century Market, in that said business earned no profit during the period from October 2, 1948, to November 29, 1948."*

The foregoing finding is immaterial since it is in favor of defendant.

## X

*"That plaintiffs suffered damages in the amount of $2,-500.00, representing the difference between the aforesaid reasonable market value of said Century Market of $10,000.00, and the said price of $7,500.00 for which the defendant, Miriam Ritner, agreed to sell said Century Market to the plaintiffs."*

The finding *supra* is amply supported by the evidence set forth above. There is left a mere mathematical calculation to ascertain the amount of damage sustained by plaintiffs as a result of defendant's breach of her contract.

The record in the instant case is exceptionally free from error of any kind.

From the foregoing findings and the evidence recited in support thereof it is obvious that the present appeal is unjustified, vexatious, frivolous and was taken solely for the purpose of delaying and harassing plaintiff. As said by this court in *Sipe* v. *McKenna*, 105 Cal.App.2d 373, at 375 [233 P.2d 615], speaking through the late Justice Wilson, "This appeal has not only caused plaintiff an unnecessary expense but has consumed the time of this court which might have been spent in determining meritorious cases. Such appeals apparently can be discouraged only by the imposition of a penalty on the offender as authorized by section 957 of the Code of Civil Procedure. (Citing cases.)"

The judgment is affirmed, damages are imposed upon defendant-appellant in the sum of $150 for having taken and prosecuted a frivolous appeal and the trial court is instructed to enter judgment in favor of plaintiff and against defendant for said sum in addition to the costs of appeal.

Moore, P. J., and Fox, J., concurred.