[Sac. No. 4826. In Bank.—September 3, 1935.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent, v. T. S. PENDERGRASS et al., Appellants.

Bush & Cleary for Appellants.

T. B. Scott, Louis Ferrari, T. J. Bricca and C. H. White for Respondent.

THOMPSON, J.—This cause was transferred to this court after decision by the District Court of Appeal. We are satisfied with and adopt a portion of the opinion rendered therein, which is as follows:

"This action was instituted by the plaintiff to recover judgment on a promissory note in the sum of $4,750. Trial was had before a jury. The note was payable upon demand, and the complaint was a simple action based upon the promissory note. The defendants in their answer interposed two defenses, to-wit: That the note was obtained by fraud, and also was secured by a chattel mortgage. The plaintiff introduced the note in evidence, and also the testimony of a witness to the effect that the note had not been paid. Following this, counsel for the defendants made an opening statement, at the conclusion of which the court directed judgment in favor of the plaintiff. From this judgment the defendants appeal.

■ "The respondent objects to the consideration of the defendants' appeal on the ground that the appellants have not sufficiently complied with subdivision 3 of rule VIII of the rules governing appeals taken to this court, the point being urged that the briefs of appellants do not sufficiently comply with the rules just referred to in indicating the portions of the record upon which appellants rely for reversal.

"The opening brief of appellants, while it sets forth the substance of the record, does not make specific reference to the reporter's transcript, but does refer to the pages of the clerk's transcript where the facts included in the opening statement are set forth in the answer filed by the appellants. The concluding brief of the appellants does specifically indicate the portion of the transcript where a complete report of the opening statement may be found. No difficulty having been experienced by the court in ascertaining the grounds upon which this appeal is based, and also in view of the fact that no trial was had upon the merits of this cause, and judgment having been entered against the defendants upon their opening statement, we conclude that the respondent's objection to a consideration of this appeal upon its merits should be disregarded.

"The opening statement, while not referring to the pleadings, constituted an oral presentation to the court and jury of the defenses set up in the answer. While too lengthy to be set forth herein, we glean from the opening statement the following:

"In 1928, the defendants took over a ranch near Oakdale in Stanislaus county for the purpose of growing lettuce seed thereon. The ranch was then subject to a trust deed securing a note in favor of the Bank of Italy subsequently becoming the Bank of America, in the sum of $20,000. From the time of taking over the ranch in 1928, appellants continued the operation thereof in the growing of lettuce seed and marketing the same in the southern portion of the state, particularly in the Imperial valley. Financial transactions appear to have been had between the plaintiff and the defendants until January, 1932, at which time the $20,000 note, secured by a trust deed, remained unpaid, and another note in the sum of $14,997.40, unsecured, was held by the plaintiff, signed by the defendants. At this time negotiations were entered into between the defendants and the plaintiff, by and through its representatives, relative to the defendants continuing their

operation of the ranch during the year 1932. At the time of the beginning of these negotiations it appears that the appellants had on hand personal property consisting of ranch equipment of the value of approximately $25,000, and also unsold lettuce seed in storage of the approximate value of $6,000.

"The opening statement then sets forth that the plaintiff, by its representatives, promised the defendants that if they would execute a new note for $4,750, to be credited upon the $14,997.40 note to which we have referred, and would give a chattel and crop mortgage, which mortgages should secure the notes referred to, the plaintiff would not interfere with the operation of the ranch by the defendants during the year 1932, but would allow them to operate the ranch and make sales of lettuce seeds to prospective purchasers, contracting for the sale and delivery of the seeds in advance, turning the same over to the appellants. In consideration of this promise the defendants were to execute, and did execute the note and mortgages which would cover all the property owned by the defendants, and which, up to that time, appears to have been unincumbered.

"The opening statement then goes on to recite that the defendants made preparations to operate the ranch, to secure contracts for the seed to be raised, and further, that the promises made by the plaintiff, through its representatives, were made without any intention on their part to keep and perform the same, and were fraudulently made for the purpose of securing the notes and chattel and crop mortgages mentioned in the opening statement. The opening statement of the appellants, in relation to the indebtedness of the mortgages, is in the following words and figures (after providing that the $6,000 worth of lettuce seed should be turned over to the appellants [respondents] as security for the indebtedness), to-wit: 'That a new note was to be executed for the balance of the indebtedness above the $20,000.00 originally secured by the trust deed, and that the chattel mortgage was to secure not only this indebtedness above the $20,000.00, but was to cover the whole thing, $20,000.00 plus the balance of the indebtedness which at that time was about $14,750.00.' And further: 'That this chattel and crop mortgage be executed by Mr. Pendergrass; that a new note in the sum of $4,753.00 be executed by Mr. Pendergrass, to be credited on a note that they already had of $14,753.00, that is, the balance due on it was

$14,753.00; that those notes were to be secured by the chattel mortgage, by the pledge of the warehouse receipt of 6500 pounds of lettuce seed on hand, and by the assurance that the sales of the 1932 crop of seed would pass through the bank and the moneys from the sales of the 1932 crop should all go to the bank in payment,' etc.

''The opening statement further shows that the mortgages referred to were executed by the defendants, and that the plaintiff failed to keep its promises, and within a short time after the execution of the mortgages proceeded to seize all the property covered thereby.

''The answer as well as the opening statement alleges that the note sued upon in this action was and is secured by a chattel mortgage. Under the provisions of section 726 of the Code of Civil Procedure, if the allegations referred to set forth the true status, then and in that case the plaintiff's cause of action should have been abated. That section provides for only one form of action, specifying the procedure, to-wit, the foreclosure of the mortgage, which was not followed in this case. The respondent seeks to avoid the force of this contention on the part of the appellants by referring to the mortgage itself, and contending that the note sued upon is not secured, basing its argument upon the fact that the answer of the defendants alleges that the note is secured by mortgage of a certain date, and recorded at a certain place in the official records of Stanislaus county. However, such a reference does not make the mortgage a part of the answer, and it was not made a part of the answer in this case; consequently, the contention of the respondent and the reply of the appellants in relation thereto constitute no part of the record of which this court can take notice. It does establish, however, the error of the court in disregarding this portion of the defendants' opening statement, because whether the note sued upon was or was not in fact secured by a chattel mortgage or a crop mortgage could only be determined by the introduction of the mortgage in evidence, which was not done. Both the appellants and the respondent lay down the premise that upon the consideration·of this appeal, everything set forth in the opening statement must be considered as true. Therefore, it must be held upon this appeal that the note sued upon in this action was and is secured by a chattel mortgage.''

 Inasmuch as the cause must go back to the trial court for further proceedings therein it becomes necessary for us to determine whether oral testimony may be introduced to establish the alleged promise of respondent that if appellants executed the note and mortgage and did the other things mentioned, they would not be required "to make any payments on their indebtedness, either interest or principal, until this money came in from the 1932 crop of lettuce seed, and that the bank would permit them to go ahead and operate and produce this 1932 crop". While we have quoted the exact language used in the opening statement of appellants, it is manifest that the promise which it is claimed they relied upon was, as pleaded by them, that the respondent would "extend" or "postpone" all payments for the period of one year. This promise is in direct contravention of the unconditional promise contained in the note to pay the money on demand. 
The question then is: Is such a promise the subject of parol proof for the purpose of establishing fraud as a defense to the action or by way of cancelling the note, assuming, of course, that it can be properly coupled with proof that it was made without any intention of performing it? Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing. We find apt language in *Towner* v. *Lucas' Exr.*, 54 Va. (13 Gratt.) 705, 716, in which to express our conviction: "It is reasoning in a circle, to argue that fraud is made out, when it is shown by oral testimony that the obligee contemporaneously with the execution of a bond, promised not to enforce it. Such a principle would nullify the rule: for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud. The true question is, Was there any such agreement? And this can only be established by legitimate testimony. For reasons founded in wisdom and to prevent frauds and perjuries, the rule of the common law excludes such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement itself in legal contemplation, cannot be

regarded as existing in fact. Neither a court of law nor of equity can act upon the hypothesis of fraud where there is no legal proof of it." The rule referred to in the quotation has found expression in sections 1625 and 1698 of the Civil Code and section 1856 of the Code of Civil Procedure and, according to our authorities, is one not only of evidence but also of substantive law. (*Harding* v. *Robinson*, 175 Cal. 534 [166 Pac. 808] ; *Lindemann* v. *Coryell*, 59 Cal. App. 788 [212 Pac. 47, 48].) The last-cited case confirms the opinion we entertain, for while it is said no question of fraud was raised, yet the effort was made to prove that the note was executed upon the understanding that the payee would not enforce payment until the payor had sold sufficient real property to enable him to pay. It was there said, after citing a pertinent section of Wigmore on Evidence, that fraud may not be established by parol evidence to contradict the terms of the writing "when the statements relate to rights depending upon contracts yet to be made, to which the person complaining is a party, as under such circumstances he has it in his power to guard in advance against any and all consequences of a subsequent change of conduct by the person with whom he is dealing, and to admit evidence of extrinsic agreements would be to open the door to all evils that the parol evidence rule was designed to prevent." For further authorities involving a like principle see *McArthur* v. *Johnson*, 216 Cal. 580 [15 Pac. (2d) 151] ; *Pierce* v. *Avakian*, 167 Cal. 330, 331 [139 Pac. 799] , *Booth* v. *Hoskins*, 75 Cal. 271 [17 Pac. 225], and *Estate of Watterson*, 130 Cal. App. 741 [20 Pac. (2d) 772].

For the reasons stated the judgment is reversed.

Shenk, J., Waste, C. J., Preston, J., and Seawell, J., concurred.