[Civ. No. 2850.  Fourth Dist.  Aug. 3, 1942.]

THOMAS F. COBBS, Appellant, v. MILDRED ROBERT-SON COBBS, Respondent.

Dempster McKee for Appellant.

Luce, Forward, Lee & Kunzel for Respondent.

BARNARD, P. J.—This is an action to cancel two contracts on the ground that their execution had been obtained by fraud and to have it declared that both are null and void.

The plaintiff and defendant were married in 1916 and lived in China, where the plaintiff was employed, until 1921. The plaintiff then retired from business and they established their home in San Diego. The plaintiff was then worth a half million dollars, $300,000 of which he had accumulated after the marriage.

In 1923, while the defendant was in Europe with her mother, the plaintiff went to Reno where he brought a divorce proceeding after remaining there for the required time. Shortly before the divorce action was heard both parties and their attorneys met in Reno for the purpose of negotiating a property settlement agreement. They quickly agreed that the plaintiff was to pay to the defendant $300 per month, but the plaintiff strenuously refused to sign a contract drawn by defendant's attorney which provided that such payments should continue for the term of her natural life, and he insisted that this be so changed as to provide for a discontinuance of the payments in case she remarried. She refused to allow this change to be made and on November 1, 1923, an agreement was executed providing that the plaintiff would pay to the defendant $300 on the first day of each and every month thereafter during the term of her natural life. The agreement further provided that within sixty days thereafter

the plaintiff would deposit securities of the value of $50,000 with the Guaranty Trust Company of New York as security for the monthly payments to be made to the defendant, and that within that time the parties would execute a trust agreement with that trust company in order to carry out this provision. The next day after that agreement was executed a decree of divorce was entered in which the court approved this agreement. Early in January, 1924, the defendant returned to San Diego and the trust agreement provided for in the other contract was executed. Later that month the plaintiff was married to another woman.

The plaintiff made all of the monthly payments called for by the contract for more than 16 years. In June, 1940, the plaintiff learned that the defendant was about to remarry and started this action, the papers in which were served a few hours before the defendant married another man. The complaint alleges that the defendant, for the purpose of inducing the plaintiff to enter into these property settlement agreements, promised the plaintiff that she would not remarry, that she further promised that in the event of her subsequent marriage she would cancel the contracts and relieve the plaintiff of the payments provided for therein and would terminate the trust created under the other agreement, and that these promises were made without any intention on her part to perform the same.

At the trial the plaintiff testified that when the proposed property settlement agreement was under discussion in Reno the parties and their attorneys argued for a day and a half, and that "on each and every occasion we would come back to this clause about payment for life"; that he finally threatened to leave Reno if an agreement was not reached that day; that they met again that evening at which time the defendant said: "What is the use of all of this objection? I never intend to get married, anyhow. I shall never remarry. Tom knows, for reasons which I have explained to him so often, that I never will remarry. Therefore the agreement might as well stand as it is"; that he accepted her statement that she would never remarry; that the defendant then said: "Very well; I will give him a letter—If I ever remarry again I will give him a letter to cancel and nullify the agreement"; and that he replied: "That will be quite acceptable to me, because I don't believe she will ever remarry again." He further testified that she promised to give him this letter before the execution of

the other agreement establishing the trust; that later, at San Diego, he refused to sign the trust agreement until he received this letter; that Judge Sloane, the defendant's attorney, refused to do anything about getting the letter; and that he then told Judge Sloane that he had made up his mind to execute the agreement because he was sure that the defendant would never marry again and that he was executing the trust agreement ''against my best judgment; against the advice of my attorneys, on the strength of the promise of Mrs. Cobbs that she will never remarry again.'' He then signed the agreement and never received such a letter.

The court found that the defendant, in order to induce the plaintiff to enter into said contracts, orally promised the plaintiff before the execution of the first contract that she would not remarry, that in the event she did so she would cancel both of these agreements and would relieve the plaintiff from the payments called for by the contracts, that she would deliver to the plaintiff a letter to that effect before he executed the trust agreement, and that these promises were made without the intention on her part to perform the same. The court concluded, however, that the defendant is entitled to a continuance of the monthly payments provided for in the contracts and that the plaintiff is not entitled to have either of these contracts cancelled. Judgment was entered accordingly and the plaintiff has appealed.

The appellant relies upon a well established exception to the general rule that oral evidence may not be received to vary the terms of a written contract and that all prior negotiations must be deemed merged in the agreement as written. Under this exception, it has been held that where the execution of a contract has been induced by a promise made without any intention of performing it, this constitutes such fraud in obtaining the contract that it may be declared null and void in an equitable action brought for that purpose. Parol evidence to show fraud is permitted in such cases on the theory that it does not, in fact, change or contradict the terms of the contract but rather shows that no binding contract has been legally made. Appellant cites in this connection *Williams* v. *Hasshagen*, 166 Cal. 386 [137 Pac. 9]; *Martin* v. *Lawrence*, 156 Cal. 191 [103 Pac. 913]; *Millar* v. *Millar*, 175 Cal. 797 [167 Pac. 394, Ann. Cas. 1918E, 184, L. R. A. 1918B, 415]; *Graham* v. *Los Angeles First National Trust & Sav. Bank*, 3 Cal. (2d) 37 [43 P. (2d) 543]; *Boulevard Land Co.* v. *King*,

125 Cal. App. 224 [13 P. (2d) 864], and a number of other cases. In each of such cases there was involved a promise to do some additional act which was not covered by the terms of the contract, rather than an act which was directly contrary to the terms of the agreement.

A number of cases in this state have pointed out the distinction, with respect to permitting oral proof of a promise without the intent to perform for the purpose of nullifying a written contract, between situations where the thing promised relates to a matter about which the written contract is silent and cases where it relates to matters covered by the contract and therefore resting upon a higher form of evidence than oral testimony. In *Bank of America etc. Assn.* v. *Pendergrass*, 4 Cal. (2d) 258 [48 P. (2d) 659], the court said: ". . . the promise which it is claimed they relied upon was, as pleaded by them, that the respondent would 'extend' or 'postpone' all payments for the period of one year. This promise is in direct contravention of the unconditional promise contained in the note to pay the money on demand. The question then is: Is such a promise the subject of parol proof for the purpose of establishing fraud as a defense to the action or by way of cancelling the note, assuming, of course, that it can be properly coupled with proof that it was made without any intention of performing it? Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing. We find apt language in *Towner* v. *Lucas' Exr.*, 54 Va. (13 Gratt.) 705, 716, in which to express our conviction: 'It is reasoning in a circle, to argue that fraud is made out, when it is shown by oral testimony that the obligee contemporaneously with the execution of a bond, promised not to enforce it.' "

In *W. R. Campbell Co.* v. *Sears, Roebuck & Co.*, 136 Cal. App. 765 [29 P. (2d) 910], the court said:

"Plaintiff seeks to evade the result of its plain terms by proof of a parol, unperformed agreement which is directly contrary to such clear meaning. It is well settled that a fraudulent representation as to a material matter inducing the execution of an agreement may be shown by parol evidence, even where the written instrument purports to contain

the entire agreement between the parties. (*Hunt* v. *L. M. Field, Inc.,* 202 Cal. 701, 703 [262 Pac. 730].) In our opinion, however, a distinction must be made between such a parol promise as the one here, which by its very nature is superseded by the final writing, inconsistent with it, and a promise made with no intention of performing the same, not inconsistent with the writing, but which was the inducing cause thereof.''

Similar views are expressed in *Lindemann* v. *Coryell,* 59 Cal. App. 788 [212 Pac. 47], and in *Oxnard Theatres, Inc.* v. *Paramount Pictures, Inc.,* 24 F. Supp. 44. In the latter case the rule is thus stated: ''. . . when the subject of the alleged representation is covered by the agreement in a manner different from that alleged, a party to the agreement cannot avoid the rule which makes the written agreement the unimpeachable memorial of the understanding between the parties and claim the benefit of a contradictory undertaking by averring that it was a promise made without intention to perform, and, therefore, fraudulent.'' This rule is based upon the sound principle that a party having agreed in writing to do a certain thing may not stultify his written agreement by claiming that, in fact, he relied upon the other party's oral promise that the terms of the agreement should not be complied with.

The rule pointed out in the cases last cited is applicable and controlling here. An oral promise to sooner terminate a written agreement to make fixed payments for a specified term, and to cancel such payments on a certain contingency, cannot be other than one relating to the same subject-matter and necessarily amounts to an agreement that the terms of the written contract shall not be carried out as therein provided. While parties may well provide for a change in their obligations under changed conditions they should not be allowed to agree both ways at the same time on the same proposition.

Appellant's real contention here is that he was induced to enter into a written agreement to make monthly payments to the respondent so long as she lived by an oral promise on her part that she would not enforce that agreement, but would release him from such payments in the event of her remarriage. The oral promise thus relied on not only related to a matter covered by the written agreement, and was directly contrary to the provisions of that agreement, but it related to the one point which was particularly in dispute between the

parties in negotiating the terms of that agreement. The appellant himself testified that the respondent positively refused to change the proposed contract in that regard and that he executed the agreement because she had promised not to enforce the very provision which she refused to change or eliminate. In effect, he claims that he was willing to execute this agreement with its definite and certain provision in this regard because the parties had theretofore specifically agreed to the contrary in respect to those very terms. Under the rule referred to this may not be done, and even under the claim of fraud arising from a promise made without intent to perform oral evidence cannot be thus used to directly contradict the terms of a written instrument.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 1, 1942.