[Civ. No. 8494.   Third Dist.   June 13, 1955.]

WILLIAM SHYVERS, Appellant, v. EDWARD J. MITCHELL et al., Defendants; E. CHESTER ROBINSON, Respondent.

Edmund J. Dunning for Appellant.

Zeff & Halley and Breed, Robinson & Stewart for Respondent.

SCHOTTKY, J.—This is an appeal from a judgment entered in favor of the respondent in an action to recover upon a continuing guaranty whereby respondent agreed to pay all past and future indebtedness of one E. J. Mitchell to the First National Bank in Richmond, the predecessor in interest of the appellant herein.

Respondent admits that he executed the written agreement on June 6, 1949, to secure a promissory note of even date of E. J. Mitchell in the principal amount of $3,500 and payable to the First National Bank in Richmond. He testified that he did so in order to enable Mr. Mitchell, a life-long friend, to procure $1,000 which he needed immediately to prevent threatened criminal prosecution for issuing a $1,000 check which had been dishonored. However, at the suggestion of Mr. Partridge, the then president of the payee bank, the note was made in the larger amount in order to discharge three outstanding notes of smaller amounts and thereby consolidate Mr. Mitchell's total indebtedness into one written obligation due the bank. The note of June 6, 1949, was renewed by the execution on December 15, 1949, by Mr. Mitchell of a new note in like amount, but respondent does not claim to have been released from liability because of such extension of time. It is his contention that the guaranty was void because its execution was induced by the fraudulent representations of Mr. Partridge that respondent would never be held liable thereunder, that his bank held ample security for the note, and that respondent's guaranty was needed solely for the purpose of satisfying the rules of the bank examiners.

Over appellant's objection, and subject to his motion to strike, respondent and Mr. Mitchell testified that Mr. Partridge, the president of the payee bank, told respondent that "he wouldn't come back on" him and that if Mr. Mitchell didn't repay the loan, "he would do it himself."

The court, over appellant's objection, also permitted respondent to testify that at the time of the transaction Mr. Partridge told him that the bank "had security" of Mr. Mitchell's one-half interest in certain real property which was worth about $15,000. In this respect, Mr. Mitchell testified that he and his wife then owned said realty as joint owners but that he was restrained from disposing of, or hypothecating, his interest therein by a court order issued in his wife's pending divorce action. He further testified that Mr. Partridge told respondent that he "certainly would get half of it, and that would be sufficient to liquidate a

$3,500 note, which had I received it, I would have done."
However, Mr. Mitchell permitted a default judgment to be
taken against him and the whole of the property was awarded
to his wife.

Respondent also testified, over appellant's objection, that
Mr. Partridge told him that the First National Bank of Rich-
mond, appellant's assignor, held as security for any and all
obligations of Edward J. Mitchell then owing or which might
become owing to said First National Bank in Richmond the
legal title to a 1947 convertible Buick automobile, having a
value of approximately $2,000. The fact was that the payee
bank did not have this pink slip but it was in the hands of
another bank of which Mr. Partridge was an officer and to
which Mitchell was also indebted. The trial court found
that these representations of Partridge, as president of said
bank, were false and fraudulent and were made without
any intention on the part of said Partridge to perform them
and that respondent executed the guaranty relying on said
representations, and that no valid contract of guaranty was
ever entered into.

Respondent also testified that before signing the guaranty
he insisted upon discussing it with Sherrill Halbert, then
district attorney of Stanislaus County, and at the time of
the trial superior judge of said county. The reason respondent
assigned for this was that he "wanted to be sure that the
representations made to me were correct." Respondent did
not testify as to what advice Judge Halbert tendered.

At the conclusion of first day of the trial a stipulation was
entered into between counsel for respondent and Mr. Milich,
the then counsel for appellant, that a written statement of
Judge Halbert would be prepared and would then be admitted
in evidence. A recess was taken and when the court recon-
vened a little over three months later appellant was repre-
sented by different counsel who objected to the introduction
of Judge Halbert's statement, but the court admitted it,
stating that it had been so stipulated. Judge Halbert's state-
ment was to the effect that respondent told him that Mr.
Partridge said he would not be held liable on the guaranty as
the bank held more than sufficient security to assure payment
of Mr. Mitchell's note. Judge Halbert stated that he pointed
out that such representations were not contained in the guar-
anty and that if respondent signed it, "he had better be
prepared to pay the full amount of the loan in case Mr.

Mitchell did not pay it.'' Despite such forewarning, respondent executed the agreement.

In arguing for a reversal of the judgment appellant makes three major contentions: (1) The court erred in admitting parol evidence to vary the terms of the written contract of guaranty; (2) the court erred in admitting the written statement of Judge Sherrill Halbert; and (3) the evidence was insufficient to establish fraud on the part of appellant's assignor.

Appellant relies upon and cites section 1856 of the Code of Civil Procedure which reads as follows:

''When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

''1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

''2. Where the validity of the agreement is the fact in dispute.

''But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties.''

Appellant argues that the court erred in admitting evidence of the statements of Mr. Partridge that respondent would not be expected to pay the note and that if Mitchell didn't pay the loan he (Partridge) would pay it himself.

He states that the instant case is quite similar to *Bank of America* v. *Pendergrass*, 4 Cal.2d 258 [48 P.2d 659], wherein an attempt was made to contradict a specific provision in a written contract—an unconditional promise to pay money contained in a promissory note and mortgage—by pleading, as fraud, a promise, allegedly made without intention to perform, that no payment would be exacted during a particular year. In that case the court held that the defense was not available because it was in direct contradiction of the unconditional promise in the writing to pay the money on demand, and stated at page 263:

''This promise is in direct contravention of the unconditional promise contained in the note to pay the money on

demand. The question then is: Is such a promise the subject of parol proof for the purpose of establishing fraud as a defense to the action or by way of cancelling the note, assuming, of course, that it can be properly coupled with proof that it was made without any intention of performing it? Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representations, some fraud in the procurement of the instrument, or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing. We find apt language in *Towner* v. *Lucas' Exr.*, 54 Va. (13 Gratt.) 705, 716, in which to express our conviction: 'It is reasoning in a circle, to argue that fraud is made out, when it is shown by oral testimony that the obligee contemporaneously with the execution of a bond, promised not to enforce it. Such a principle would nullify the rule: for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud. . . .' "

In 38 California Law Review, 536, 538, it is stated:

". . . The California courts . . . will admit evidence of an oral promise made with intent not to perform it only if it is 'not inconsistent with the writing, and . . . is the inducing cause thereof.' As a result, a wrongdoer escapes liability where the writing conflicts with the terms of his prior oral promise made without an intention of performance, but is liable if the writing has been induced by false representations of existing facts other than the state of the promisor's mind.

. . . . . . . . .

". . . In the leading supreme court case of *Bank of America* v. *Pendergrass* [4 Cal.2d 258 (48 P.2d 659)], however, the court stated that evidence of any prior promise directly at variance with the writing was inadmissible, even though the promise was made without intention of keeping it."

We think it is clear that evidence of the promises of Partridge hereinbefore set forth could not properly be received or considered as constituting a defense to the action, for to do so would in our opinion violate the parol evidence rule. While it may be true that "where the execution of a contract has been induced by a promise made without any intention of performing it, this constitutes such fraud in obtaining the contract that it may be declared null and void"

(*Cobbs* v. *Cobbs,* 53 Cal.App.2d 780, 783 [128 P.2d 373]), yet when that promise which, because it is squarely against the terms of the writing, does by its very nature, if counted on, supersede that writing, then, even though it be made with intent on the part of the promisor that the promise will not be kept, evidence of it can neither be received nor counted upon to support a finding of fraud. (*Simmons* v. *California Institute of Technology,* 34 Cal.2d 264, 274 [209 P.2d 581].)

If the judgment in the instant case depended upon the admission of the promises of Partridge we would be required to hold that it was reversible error to admit them and that the judgment was without evidentiary support. However, it must be borne in mind that the instant case was tried by the court without a jury, and that when this evidence was offered and objected to the court stated: "I will let the matter go in subject to a motion to strike out. Fraud is charged here. I want to see what the background is." It is evident from the record that the court desired to understand the entire background and that the court was familiar with the parol evidence rule, and we are satisfied that the court did not base its decision in the case on these promises of Partridge.

We believe that the court properly allowed respondent to testify that at the time of the transaction Partridge told him that the bank "had security" of Mr. Mitchell's one-half interest in certain real property which was worth about $15,000, and also that Partridge told him that valuable security consisting of the legal title of an automobile worth $2,000 was held and in effect would be held by the bank making the loan to Mitchell. For as stated in *Simmons* v. *California Institute of Technology, supra,* at page 274:

"It is clear that 'where the execution of a contract has been induced by a promise made without any intention of performing it, this constitutes such fraud in obtaining the contract that it may be declared null and void' but that 'a distinction must be made between . . . a parol promise . . ., which by its very nature is superseded by the final writing, inconsistent with it, and a promise made with no intention of performing the same, not inconsistent with the writing, but which was the inducing cause thereof.' (*Cobbs* v. *Cobbs,* 53 Cal.App.2d 780, 783, 785 [128 P.2d 373].) Exhibit 'A' provided that 'the royalty on said invention shall be paid to the . . . Institute, or committees or other agencies of bodies which the . . . Institute may designate. . . .' The promises of Dr. Clark were that the money, although paid to the

Institute as a matter of administrative procedure, nevertheless was to be used exclusively for Impact Research. Therefore, the promise was directed to the matter of the *use* of the money, whereas the terms of the memorandum dealt with nothing more than the form of the payment of it. These promises by Dr. Clark as to the use of the royalties were the fraudulent inducement, or motive, for the contract, but they were not incorporated in or superseded by the terms of the agreement as to payment. The two are not inconsistent or 'at variance,' inasmuch as they deal with wholly different matters. It was, therefore, proper to receive parol evidence to prove the promises of Dr. Clark. [Citing cases.]''

The court found that these representations were false, that they were material, and that respondent relied upon them. The evidence supported these findings. These misrepresentations, which were relied upon by respondent, were sufficient alone to justify the defense of fraud which can be pleaded as a defense against the obligation contained in the guaranty and are sufficient to wholly defeat the action. Said the Supreme Court in *Field* v. *Austin,* 131 Cal. 379, 382 [63 P. 692], in reversing a judgment based on promissory notes:

" 'There are three methods by which, in cases like the present, a party defrauded may obtain relief: 1. Cancellation or rescission, etc.; . . . 2. Affirmative relief by an action to recover compensation for the injury sustained by the fraud of the defendant, where no cancellation is necessary as . . . the basis of such recovery; 3. Defensive relief, whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability.' . . . And in the last case 'it is permissible for the defendant to recoup to a partial extent, or to defeat the action to the entire extent of the note, for fraud in the obtaining of the note or in its consideration, [even] where it is admitted that the party who gave the note retained the goods and made no offer to return them.' . . . Or, in other words, 'in cases like the present, fraud may be given in evidence as a defense, and will be an answer to the whole demand, or in abatement of the damages, according to the circumstances of the case.' ''

Appellant contends also that the admission into evidence of Judge Halbert's statement was a violation of both the parol evidence rule and the hearsay evidence rule and was prejudicial to appellant's right. However, the record shows that it was stipulated between counsel for respondent and appellant in open court that a statement of what Judge

Halbert had told counsel would be prepared and that "the statement as finally approved by Judge Halbert will be submitted in evidence and given the same consideration as though he were present." When the trial resumed some three months later the statement signed and sworn to by Judge Halbert was offered and the new counsel for appellant objected to its introduction. However, the court ruled that the stipulation had been entered into and admitted the statement in evidence. We are satisfied that the record supports the court's view that the stipulation had been entered into and that the court did not err in admitting it.

Furthermore, we do not believe that appellant suffered any prejudice from its admission, for while the statement did contain some hearsay statements the court stated in admitting it: "There's no Jury here, and so I am going to overrule the objections, and let the statement be filed, because I know we discussed this case here with the understanding at that time, in Chambers, or wherever it was, I left here with the full understanding that counsel could get together and have Judge Halbert file a written statement with counsel, which has been done here. Now, as to the legality of the thing, it is here for what it is worth, at least one part in there. I think it is all right, but, on the legal point, I am not going on anything else but the law, and I am following the law as to hearsay rule. I know what that is. I know surely that certain part of it is hearsay, no doubt about it at all, . . ."

No other points raised require discussion.

█ We are satisfied that in the instant case the evidence was sufficient to establish the defense of fraud, and that while the court may have been extremely liberal in the admission of evidence there was no error which resulted in a miscarriage of justice. The court was fully justified in concluding from the evidence that respondent was induced to execute the guaranty by the false and fraudulent representations of Partridge that the bank held ample security for the loan to Mitchell and that such fraud was a complete defense to the action upon the guaranty.

The judgment is affirmed.

Van Dyke, P. J., and Finley, J. pro tem.,* concurred.

·A petition for a rehearing was denied July 13, 1955, and appellant's petition for a hearing by the Supreme Court was denied August 11, 1955.

---

*Assigned by Chairman of Judicial Council.