[Civ. No. 10509. Fourth Dist., Div. Two. Aug. 24, 1971.]

COAST BANK, Plaintiff, Cross-defendant and Appellant, v.
ROBERT E. HOLMES, Defendant, Cross-complainant and Respondent.

COUNSEL

Leonard B. Hankins for Plaintiff, Cross-defendant and Appellant.

Wenke, Kemble & Burge and Gary L. Taylor for Defendant, Cross-complainant and Respondent.

OPINION

TAMURA, J.—Plaintiff (Bank) brought the present action on a promissory note to recover the principal ($51,053), accrued interest, and attorney fees. Defendant (Holmes) admitted execution of the note but pleaded failure of consideration, nonoccurrence of conditions precedent, constructive fraud and illegality. He also cross-complained for reformation. Except as to illegality, the court found in favor of defendant on all affirmative defenses and adjudged that plaintiff take nothing on the complaint. In addition, the judgment decreed reformation of the note as prayed for in the cross-complaint and awarded defendant attorney's fees in the sum of $9,836. The Bank appeals from the judgment.

The decisive issues posed by this appeal are: (1) Whether the admission of evidence to prove the affirmative defenses constituted a violation of the parol evidence rule and (2) whether the award of attorney's fees pursuant to Civil Code section 1717, constituted an invalid retroactive application of the statute.

The facts may be summarized as follows: The Bank had made loans to one David Reid and others with Reid apparently being the ultimate beneficiary. In late 1965, as a result of a bank examiner's expression of concern over the liberality of the Reid loans, the Bank was pressing Reid either for payment or for additional collateral. Reid was sole stockholder of a corporation which owned two parcels of land, one seven acres and the other eight, and escrows were then pending for the sale of the seven acres for $150,000 and the eight acres for $175,000. The properties were subject to first and second trust deeds securing an indebtedness of approximately $107,000. During this period Reid was sharing offices with Holmes and owed him approximately $7,000. Holmes was a man of considerable means and his financial position was solid.

Sometime in December 1965, Mr. Woods, an assistant vice president of the Bank, prepared a trust deed in favor of the Bank covering the seven-acre parcel and took it to Reid for his signature to provide the Bank with additional security. When asked to sign the trust deed, Reid remarked that he didn't think the Bank could legally take a third trust deed as collateral. Woods did not pursue the matter. Later, however, Woods suggested that Holmes assume Reid's obligation to the Bank and, as security, take a third trust deed on the seven-acre parcel and, as added protection, a quitclaim deed to the parcel. Holmes agreed to do so provided Woods obtained the Bank's assurance that it would protect Holmes' third trust deed from foreclosure by senior lien holders. Ultimately, Holmes took a note for $57,987.55 from Reid (the amount represented $51,053 Reid owed the Bank and $6,934.55 he owed Holmes), a trust deed and a quitclaim deed to the seven-acre parcel and, upon receiving assurances from officials of the Bank, including its president, that it would protect his third trust deed from foreclosure, he executed and delivered to the Bank his promissory note for $51,503.[1] The Bank recorded an unsecured loan to Holmes for the amount

[1]The promissory note provided as follows:
"$51,053.00                              Garden Grove, California Jan. 15, 1966

"On demand, if no demand then 180 days from date for value received, I promise to pay in lawful money of the United States of America, to the order of the COAST BANK at its Garden Grove Office in this City the principal sum of Fifty-One Thousand Fifty-Three and No/100 Dollars, with interest in like lawful money from date at the rate of 6 percent per annum, interest payable on demand and thereafter.

"If default be made in the payment when due of any part or installment of interest,

of the note, secured a written authorization from him to disburse the funds, and applied the loan proceeds to discharge Reid's indebtedness to the Bank. The escrow for the sale of the two parcels failed to close, the purchaser withdrew his deposits from escrow, the senior lien holders foreclosed and Holmes' third trust deed was extinguished.

The court found that the promissory note was not intended to be a complete embodiment of the agreement of the parties but represented only a part of an overall agreement. The court found that the Bank promised that if Holmes would assume Reid's obligations, it would obtain for Holmes a third trust deed on the seven-acre parcel, would not demand payment on the note until the parcel was sold for an amount sufficient to satisfy the liens and pay off the note, pending the sale it would protect Holmes' trust deed by preventing foreclosure by senior lien holders, and would cancel the note in the event foreclosure could not be prevented. The court found that the promises constituted the consideration for the note, that there was a failure of coinsideration, and that conditions precedent to Holmes' liability on the note had not occurred. The court further found the Bank's promises were made with no intention of fulfilling them, that the false promises constituted "constructive fraud" and that Holmes was entitled to a decree reforming the note to reflect the true agreement of the parties.

## I

### THE PAROL EVIDENCE RULE

We first address ourselves to the propriety of the court's rulings admitting evidence in support of the affirmative defenses.

The court initially admitted the evidence subject to a motion to strike but, after hearing and considering all the evidence, determined that the note was not intended as the exclusive embodiment of the agreement of the parties and denied a motion to strike. The Bank urges that the court's rulings violated the parol evidence rule and compel reversal of the judgment. Defendant, on the other hand, contends that under the landmark decisions of *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage Etc. Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641], *Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.

then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note, without notice.

"In the event of commencement of suit to enforce payment of this note, I agree to pay such additional sum as attorney fees as the Court may adjudge reasonable.
Telephone No.: 633 9490
Mail Address:   128 E. Katella
            Orange                                   x   s/Robert E. Holmes   "

2d 525 [72 Cal.Rptr. 785, 446 P.2d 785] and *Masterson* v. *Sine*, 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561], extrinsic evidence was properly received to prove a collateral oral agreement and, moreover, that the parol evidence rule does not preclude proof of failure of consideration, failure of a condition precedent, or fraud.

In *Masterson* v. *Sine, supra,* 68 Cal.2d 222, the court rejected the orthodox "facially complete test" in determining whether a writing is to be construed as the complete agreement of the parties. It held that the ultimate test is whether the parties intended the writing to be the exclusive embodiment of their agreement and that in making that determination, the judge should examine evidence of the collateral or contemporaneous oral agreement as well as the circumstances surrounding the execution of the writing. The court posited two standards of credibility for determining whether proof of a collateral oral agreement should be permitted, the restatement standard that proof should be permitted if such an agreement might "naturally" have been made separately and the test suggested by draftsmen of the Uniform Commercial Code that the terms of such agreement should be excluded only if they would "certainly" have been included in the writing. (68 Cal. 2d at pp. 227-228.) In *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage Etc. Co., supra,* 69 Cal.2d 33 and *Delta Dynamics, Inc.* v. *Arioto, supra,* 69 Cal.2d 525, the court applied the *Masterson* rationale to questions of interpretation and repudiated the traditional facially clear and unambiguous test for determining the admissibility of extrinsic evidence to prove the meaning of terms of a written agreement.

The foregoing decisions liberalizing the parol evidence rule have not, however, changed the rule that extrinsic evidence is inadmissible to vary or contradict the terms of a written agreement. (*Weisenburg* v. *Thomas,* 9 Cal. App.3d 961, 965 [89 Cal.Rptr. 113], hg. den.; see *Tahoe National Bank* v. *Phillips,* 4 Cal.3d 11, 23 [92 Cal.Rptr. 704, 480 P.2d 320].) Defendant directs our attention to the court's observation in *Masterson, supra,* 68 Cal. 2d at page 227, that a promissory note given by a debtor to a creditor "may integrate all their present contractual rights and obligations, or it may be only a minor part of an underlying executory contract that would never be discovered by examining the face of the note." ■ We do not view the passing comment as a disapproval of the long-settled rule that in the absence of fraud, mistake, lack or failure of consideration, or nonoccurrence of a condition precedent, a prior or contemporaneous oral agreement that a promissory note is not to be payable according to its terms is not a defense to an action on the note. (*Oakland Medical Bldg. Corp.* v. *Aureguy,* 41 Cal.2d 521, 523 [261 P.2d 249]; *Bank of America* v. *Pendergrass,* 4 Cal. 2d 258, 263; *Sapin* v. *Security First National Bank,* 243 Cal.App.2d 201,

204 [52 Cal.Rptr. 254]; *Bank of America* v. *Lamb Finance Co.,* 179 Cal. App.2d 498, 502 [3 Cal.Rptr. 877].) ■ We should add as a caveat, however, that under *Masterson, supra,* extrinsic evidence of a collateral oral agreement is admissible to rebut a term of the writing "that the *law* would otherwise presume." (Italics supplied.) (68 Cal.2d at p. 229.)

■ Leaving aside for the moment the admissibility of extrinsic evidence to prove failure of consideration or fraud, evidence was received in the instant case to prove the Bank orally agreed not to enforce the note if the seven-acre parcel were foreclosed, to demand payment only if the parcel were sold for a sum sufficient to enable Holmes to pay off the note from the proceeds, and to cancel the note if the property were foreclosed. Those terms of the collateral oral agreement were clearly inconsistent with the unconditional terms of the promissory note and evidence thereof should have been excluded. (*Oakland Medical Bldg. Corp.* v. *Aureguy, supra,* 41 Cal.2d 521, 523; *Sapin* v. *Security First National Bank, supra,* 243 Cal. App.2d 201, 204-205; *Bank of America* v. *Lamb Finance Co., supra,* 179 Cal.App.2d 498, 503.) ■ While evidence is admissible to prove a condition precedent—that a contract is not to take effect until a certain condition happens, the parol evidence rule precludes proof of an oral condition subsequent inconsistent with the terms of a written agreement. (*Clyde Bldg. Assn., Inc.* v. *Walsh,* 248 Cal.App.2d 513, 515-516 [56 Cal.Rptr. 617]; Witkin, Cal. Evidence (2d ed. 1966) pp. 687-688; see *McDonald* v. *Filice,* 252 Cal.App.2d 613, 625 [60 Cal.Rptr. 832].) ■ In the instant case the conditions sought to be proved were subsequent rather than precedent; the evidence was not that the note would be ineffective until certain events happened, but that it would be discharged or cancelled if certain events occurred.

■ However, evidence of the Bank's oral promises was properly received to prove failure of consideration and fraud.

As between original parties to a promissory note, parol evidence is admissible to show lack or failure of consideration. (Code Civ. Proc., § 1856, subd. 2; *Bliss* v. *California Cooperative Producers,* 30 Cal.2d 240, 248 [181 P.2d 369, 170 A.L.R. 1009]; *Bargioni* v. *Hill,* 211 Cal.App.2d 21, 22 [27 Cal.Rptr. 142]; *Benson* v. *Andrews,* 138 Cal.App.2d 123, 132 [292 P.2d 39]; *Harper* v. *French,* 29 Cal.App.2d 214, 216-217 [84 P.2d 216].) ■ "Failure of consideration is the failure to execute a promise, the performance of which has been exchanged for performance by the other party. Among other situations, the failure may arise from the wilful breach of the promise." (*Bliss* v. *California Cooperative Producers, supra,* 30 Cal.2d 240, 248.) ■ In the present case there was evidence that the over-

riding consideration for the execution of the note was the Bank's assurance that it would protect Holmes' third trust deed from extinguishment by foreclosure. There was substantial evidence that Holmes executed the note only after receiving the assurance from highest officials of the Bank but that the Bank made no attempt to prevent foreclosure. The foregoing evidence was clearly admissible to show substantial failure of consideration. (*Harper* v. *French, supra,* 29 Cal.App.2d 214, 216-217.) The court's finding on that affirmative defense is supported by substantial competent evidence.

In addition to failure of consideration, the court found the Bank was guilty of "constructive fraud." It found in substance that the Bank induced defendant to execute the note by making false promises. "A promise made without any intention of performing it" constitutes actual fraud. (Civ. Code, § 1572, subd. 4; *Simmons* v. *Cal. Institute of Technology,* 34 Cal.2d 264, 274 [209 P.2d 581]; *Kett* v. *Graeser,* 241 Cal.App.2d 571, 573 [50 Cal. Rptr. 727]; *Burke* v. *Mission Bay Yacht Sales,* 214 Cal.App.2d 723, 732 [29 Cal.Rptr. 685]; *Grant* v. *U. S. Electronics Corp.,* 125 Cal.App.2d 193, 199 [270 P.2d 64].) ■ An inducement to enter into a contract by a false promise touching a substantial part of the consideration moving to the party to whom it is made constitutes fraud which may render the contract void. (*Simmons* v. *Cal. Institute of Technology, supra,* 34 Cal.2d 264, 274; *Grant* v. *U. S. Electronics Corp., supra,* 125 Cal.App.2d 193, 199.) However, in California a tenuous distinction has been drawn between an oral promise which is consistent with the written agreement and one which is at variance with a matter covered by the writing. (Witkin, Cal. Evidence (2d ed. 1966) pp. 684-685.) Evidence of a false promise inconsistent or at variance with the terms of the written agreement has been held to be inadmissible as being in violation of the parol evidence rule. (*Bank of America* v. *Pendergrass, supra,* 4 Cal.2d 258, 263; *Bank of America* v. *Lamb Finance Co., supra,* 179 Cal.App.2d 498, 503; *Shyvers* v. *Mitchell,* 133 Cal.App.2d 569, 573 [284 P.2d 826]; *Cobbs* v. *Cobbs,* 53 Cal.App. 2d 780 [128 P.2d 373].) But a false promise which is independent of or consistent with matters covered by the agreement has been held to be admissible. (*Simmons* v. *Cal. Institute of Technology, supra,* 34 Cal.2d 264, 274; *Kett* v. *Graeser, supra,* 241 Cal.App.2d 571, 575-576.) The rule excluding evidence of a false oral promise inconsistent with the terms of the written agreement to prove fraud has been severely criticized. (Note 38 Cal.L.Rev. 535; Sweet, *Promissory Fraud And The Parol Evidence Rule,* 49 Cal.L.Rev. 877.) As pointed out in the excellent note in 38 Cal.L. Rev. 535, at page 538, it is inconsistent to have a rule that promissory fraud may invalidate an agreement but exclude proof of such fraud when the false promise is at variance with the terms of the writing. The signifi-

cance of the distinction should not be admissibility of the evidence but rather its credibility which in turn depends on the facts and circumstances of the particular case. The recent decisions liberalizing the parol evidence rule cast some doubt on the continued vitality of the distinction. However, in the instant case we need not resolve that doubt. ▮ While some of the promises the court found to be false, such as the promise to demand payment only if the seven-acre parcel were sold for a sufficient amount and the promise not to enforce the note but to cancel it if the third trust deed were extinguished by foreclosure, were inconsistent with the unconditional terms of the note, the promise to protect Holmes' security interest was clearly independent of and consistent with the terms of the note and proof thereof was properly received. (*Simmons* v. *Cal. Institute of Technology, supra,* 34 Cal.2d 264, 274.) There was substantial evidence to suppport the court's findings that the latter promise, the prime bargained-for assurance which induced Holmes to execute the note, was falsely made. That the Bank had no intention of performing that promise when it made it may be inferred from the failure to perform and from the dubious authority of a bank to make such a promise. (See *Longway* v. *Newbery,* 13 Cal.2d 603, 610-612 [91 P.2d 110]; *Burke* v. *Mission Bay Yacht Sales, supra,* 214 Cal.App.2d 723, 732.)

▮ The Bank contends the finding of "constructive fraud" was improper in that the court failed to find the essential elements necessary to establish the existence of a fiduciary relationship. The contention is without substance. Although a conclusionary finding characterized the fraud as "constructive," specific findings were made showing the elements of actual fraud. In his summation of the case, the trial judge observed that were it necessary he would have no hesitancy in finding the behavior of the Bank officials constituted actual fraud as distinguished from "constructive fraud." In these circumstances, the Bank may not complain of the use of the more generous term in the conclusionary finding.

▮ We conclude from the foregoing analysis that the court properly admitted evidence of failure of consideration and fraud and that findings on those issues are supported by substantial evidence. It is further our conclusion, however, that the portion of the judgment ordering reformation of the note to include terms which vary or contradict the original terms cannot be sustained and must be stricken. Extrinsic evidence of promises at variance with the terms of the note were irrelevant and cannot support a decree reforming the note. (See *Tahoe National Bank* v. *Phillips, supra,* 4 Cal.3d 11, 23.) Consequently, we need not consider the Bank's contentions concerning the sufficiency of the allegations of the cross-complaint to state a cause of action or the adequacy of the findings to support reformation.

## II

### AWARD OF ATTORNEY'S FEES

The promissory note which was executed on January 15, 1966, contained the following provision: "In the event of commencement of suit to enforce payment of this note, I agree to pay such additional sum as attorney fees as the Court may adjudge reasonable."

In 1968 Civil Code section 1717 was enacted. It provides: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

"Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void.

"As used in this section 'prevailing party' means the party in whose favor final judgment is rendered." Pursuant to section 1717, the court awarded defendant $9,836 for attorney's fees incurred in the defense of the action.

██ Plaintiff contends the application of section 1717 to the instant case (1) violated the canon of statutory construction that statutes are presumed to operate prospectively unless a contrary intention is clearly expressed and (2) that it constituted an unconstitutional impairment of a contractual obligation.[2] For the reasons which follow, we have concluded that the contentions are unmeritorious.

██ A statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence before the enactment. (*Sitzman* v. *City Board of Education,* 61 Cal. 2d 88, 89 [37 Cal.Rptr. 191, 389 P.2d 719]; *Burks* v. *Poppy Construction Co.,* 57 Cal.2d 463, 474 [20 Cal.Rptr. 609, 370 P.2d 313].) ██ Thus, the application of a statute effecting a change in "procedure" or "remedy" to pending litigation is not violative of the principle of presumed nonretro-

---

[2]In its brief, plaintiff also contended that it should have been awarded reasonable attorney's fees despite the adverse judgment. However, at oral argument plaintiff conceded that *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.,* 1 Cal.3d 266 [81 Cal.Rptr. 849, 461 P.2d 33], foreclosed it from pursuing that issue and abandoned the same.

activity even though the event giving rise to the cause of action antedated the statute. (*Angeli* v. *Lischetti,* 58 Cal.2d 474, 478 [24 Cal.Rptr. 845, 374 P.2d 813]; *Norton* v. *City of Pomona,* 5 Cal.2d 54, 65-66 [53 P.2d 952]; see *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.,* 30 Cal.2d 388, 394 [182 P.2d 159]; *City of Sausalito* v. *County of Marin,* 12 Cal.App.3d 550, 557 [90 Cal.Rptr. 843].) On the other hand if the statute affects a "substantive" right, it will not be applied retroactively unless legislative intention that it shall be so applied is clearly expressed. (*DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865]; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d 388, 394.) But here, as elsewhere in the law, the labels "substantive" and "procedural" do not always provide clear-cut answers. A statute which might ordinarily be classified as "procedural" may so change the legal effect of past events that its application to pending matters may be retroactive. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d 388, 394.)

It has been declared to be a settled rule that the matter of recoverable litigation costs is subject to change by the Legislature and is governed by the law in effect at the time of judgment. (*Stockton Theatres, Inc.* v. *Palermo,* 47 Cal.2d 469, 477 [304 P.2d 7].) In *Hogan* v. *Ingold,* 38 Cal.2d 802 [243 P.2d 1, 32 A.L.R.2d 834], the court applied the rule to a statute requiring, as one of the conditions of maintaining a stockholder's derivative action, that the plaintiff furnish security for reasonable expenses, including attorney's fees, which may be incurred in defense of the action. With respect to the requirement of security, the court, with three justices dissenting, held that the rule pertaining to costs applied and that the application of the statute to the case in question was prospective, not retroactive, even though the effective date of the statute was subsequent to the commission of the alleged wrongs. The court quoted from an American Law Report Annotation on statutes relating to costs and attorney's fees (96 A.L.R. 1428), and stated: "The numerous illustrative cases which are cited show that statutes either increasing or decreasing the allowable costs, including attorney fees, are consistently applied to litigation pending when such statutes became effective, unless a contrary intent clearly appears from the statute." (*Hogan* v. *Ingold, supra,* 38 Cal.2d 802, 815.) In *Record* v. *Indemnity Ins. Co.,* 103 Cal.App.2d 434 [229 P.2d 851], the court considered the applicability to a pending action of an amendment to Labor Code section 3856, providing for an allowance and payment from a judgment of reasonable attorney's fees incurred by an employee in effecting recovery for the benefit of the employer in an action against a third party tortfeasor. The application of the amendment to a judgment on a cause of action which arose prior to the effective date of the enactment was held to be

prospective. The court reasoned that since the basis for recovery of attorney's fees was "for services rendered" and not the injury, the application of the statute was purely prospective.

The foregoing cases lend support to the view that section 1717 was not given retroactive effect in the present case. But we do not rest our decision on the theory that Civil Code section 1717, merely relates to "procedure" or "remedy." The ultimate test is whether the statute alters the legal effect of past transactions. There is no doubt but that the application of section 1717 to the present case alters the legal effect of past attorney fee clauses. Thus, section 1717 contains the attributes of both a "procedural" and a "substantive" enactment. But treating the section as relating to a "substantive matter," it is our opinion that the Legislature clearly intended the section to be applied to actions arising out of existing as well as future contracts. The rule against retroactive construction unless such intention be "expressly declared" has been said to be a common law rule of statutory interpretation which " 'should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.' " (*Mannheim* v. *Superior Court*, 3 Cal.3d 678, 687 [91 Cal.Rptr. 585, 478 P.2d 17]; *In re Estrada*, 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948]; *City of Sausalito* v. *County of Marin*, *supra*, 12 Cal.App.3d 550, 557.) The rule against giving statutes retroactive operation unless the intent to do so clearly appears is subordinate to the more fundamental rule of construction that a statute should be interpreted to effectuate legislative intent. (*Mannheim* v. *Superior Court*, *supra*, 3 Cal.3d 678, 686.) The clear inference to be drawn from the language of section 1717 is that the Legislature intended the statute to be operative on past as well as future contracts. The second paragraph of the section provides: "Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract *which is entered into after the effective date of this section.* . . ." (Italics supplied.) (Civ. Code, § 1717.) The underscored phrase would have been superfluous had the Legislature intended the entire section to apply only *in futuro*. As the court stated in *Abrams* v. *Stone*, 154 Cal.App.2d 33, at page 42 [315 P.2d 453]: "In the construction of remedial statutes such as the one now before us regard must always be had for the evident purpose for which the statute was enacted, and if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied, although the statute does not, in terms, so direct, unless, of course, to do so would impair some vested rights or impinge upon some constitutional guaranty [citation]."

The contention that the application of the section to a pre-existing contract constitutes an unconstitutional impairment of a contractual obligation is without substance. Litigation expenses incurred in the prosecution or defense of a lawsuit are in the nature of special damages. (*Prescott* v. *Grady,* 91 Cal. 518, 522 [27 P. 755]; *Wiener* v. *Van Winkle,* 273 Cal. App.2d 774, 790 [78 Cal.Rptr. 761].) No one has a vested right in the measure of damages. A statutory change in the measure of compensatory damages for a tort may be applied to an action arising out of a wrong committed before the change. (*U. S.* v. *Standard Oil Co. of Calif.,* 21 F.Supp. 645; *Feckenscher* v. *Gamble,* 12 Cal.2d 482, 499-500 [85 P. 2d 885]; *Tulley* v. *Tranor,* 53 Cal. 274, 280.) The prevailing view in other jurisdictions is that the application of statutes providing for recovery of attorney's fees to an action arising out of an existing contract does not impair contractual obligations. (See Annot. Validity Of Statutory Provisions For Attorney's Fees, 90 A.L.R. 530.)

The limits of the constitutional prohibition against impairment of contracts was succinctly delineated by the court in *Lyon* v. *Flournoy,* 271 Cal.App.2d 774, 782 [76 Cal.Rptr. 869], as follows: "The constitutional prohibition against contract impairment does not exact a rigidly literal fulfillment; rather, it demands that contracts be enforced according to their 'just and reasonable purport'; not only is the existing law read into contracts in order to fix their obligations, but the reservation of the essential attributes of continuing governmental power is also read into contracts as a postulate of the legal order. (*City of El Paso* v. *Simmons* (1965) 379 U.S. 497, 508 [13 L.Ed.2d 446, 454-455, 85 S.Ct. 577]; *Home Building & Loan Assn.* v. *Blaisdell, supra,* 290 U.S. at pp. 428-429, 434-435 [78 L.Ed. at pp. 423, 426-427].) [4] The contract clause and the principle of continuing governmental power are construed in harmony; although not permitting a construction which permits contract repudiation or destruction, the impairment provision does not prevent laws which restrict a party to the gains 'reasonably to be expected from the contract.' (*City of El Paso* v. *Simmons, supra,* 379 U.S. at p. 515 [13 L.Ed.2d at p. 458].) Constitutional decisions 'have never given a law which imposes unforeseen advantages or burdens on a contracting party constitutional immunity against change.' (*Ibid.*; see 70 Dick.L.Rev. 524-534 (1966); 56 Colum.L.Rev. 251-270 (1956).)"

It is common knowledge that parties with superior bargaining power, especially in "adhesion" type contracts, customarily include attorney fee clauses for their own benefit. This places the other contracting party at a distinct disadvantage. Should he lose in litigation, he must pay legal expenses of both sides and even if he wins, he must bear his own attorney's fees. One-sided attorney's fees clauses can thus be used as instruments of

oppression to force settlements of dubious or unmeritorious claims. (Review Of Selected 1968 Code Legislation (Cont. Ed. Bar) pp. 35-36; see *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc., supra,* 1 Cal.3d 266, 272.) Section 1717 was obviously designed to remedy this evil.[3] ▮ We have no hesitancy in holding that the application of section 1717 to pre-existing contracts constitutes a reasonable exercise of governmental power. ▮ "[I]f, notwithstanding a modification of law, the party can enforce his rights with substantially the same degree of effectiveness as before, his contract rights have not been violated." (*County of San Bernardino* v. *Way,* 18 Cal.2d 647, 662 [117 P.2d 354].) ▮ The application of section 1717 to past contracts does not result in any substantial impairment of the rights of the party who dictated the inclusion of an attorney fee clause for his benefit either to enforce the contract or to recover attorney's fees in accordance with its terms.

Defendant, as the prevailing party on this appeal, is entitled to reasonable attorney's fees for services rendered by his counsel on this appeal. Under section 1717, the prevailing party is entitled to attorney's fees for services rendered until "final judgment." This includes attorney's fees on appeal. (Cf. *Wilson* v. *Wilson,* 54 Cal.2d 264, 272 [5 Cal.Rptr. 317, 352 P.2d 725].) Defendant has requested that in the event he prevails on appeal, the matter be remanded for the fixing of reasonable attorney's fees on appeal. The request is proper.

For the foregoing reasons, the judgment is modified by striking therefrom that portion decreeing reformation of the promissory note and, as so modified, the judgment is affirmed and the matter is remanded with directions to the trial court to set a time and place for a hearing to determine a reasonable attorney fee for services rendered by defendant's counsel on appeal and to add such amount to the fee previously awarded.

Gardner, P. J., and Gabbert, J., concurred.

A petition for a rehearing was denied September 16, 1971, and appellant's petition for a hearing by the Supreme Court was denied October 21, 1971.

---

[3]Civil Code section 1717, is part of an overall legislative policy designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process by permitting recovery of attorney's fees incurred in litigation in the event they prevail. (See e.g., Civ. Code, § 1811.1 [Installment Sales Contracts]; Civ. Code, § 2983.4 [Conditional Sales Contracts]; Civ. Code, § 1794.1 [Sale Warranties Of Consumer Goods]; Civ. Code, § 1812.94 [Health Studio Contracts]; Civ. Code, § 1732 [Swimming Pool Construction Contracts].)