**GLOBE METALLURGICAL,
INC., Plaintiff,**

v.

**HEWLETT–PACKARD COMPANY,
et al., Defendants.**

No. C–2–92–585.

United States District Court,
S.D. Ohio,
Eastern Division.

May 18, 1996.

Charles Rockwell Saxbe, Richard Albert Talda, Chester Willcox & Saxbe, Columbus, OH, Kevin Robert McDermott, Schottenstein Zox & Dunn, Columbus, OH, for Globe Metallurgical.

Lawrence David Walker, Taft, Stettinius & Hollister, Columbus, OH, for Hewlett–Packard Co.

William Jay Mooney, Columbus, OH, for BSE Inc.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider Defendants Hewlett–Packard Company and Collier–Jackson, Inc.'s motions for summary judgment. Fed.R.Civ.P. 56.

## I. STATEMENT OF FACTS

The undisputed facts underlying the above-styled action are as follows. In May 1990, Plaintiff Globe Metallurgical, Inc. ("Globe") purchased an integrated computer system consisting of hardware from Defendant Hewlett–Packard Company ("H–P"), and software from Defendants Collier–Jackson, Inc. ("C–J") and Q–CIM Development Laboratories, Inc. ("Q–CIM"). This purchase originated from a "cold" sales call by H–P salesman T.J. Ryan in May 1989, at which time Globe expressed an interest in H–P's product. As a result, Ryan remained in contact with Globe and eventually undertook to survey Globe's computing needs with the assistance of James Lea, another H–P salesman. Lea and Ryan also contacted Q–CIM and C–J, and representatives from each company met with Globe personnel. H–P's sales-pitch culminated on December 15, 1989, when Ryan and Lea submitted a 68–page Sales Proposal recommending that Globe purchase a computer system consisting of H–P hardware and a small amount of related software, Q–CIM manufacturing and billing software, and C–J financial and accounting software. Curtis W. Goins Dep.Ex. 21.

The proposal recommended that Globe purchase C–J's general ledger, accounts payable and accounts receivable software. Subsequently, after reviewing Globe's payroll system, C–J issued a quotation for payroll software which had not been included in the Sales Proposal. The payroll package then became part of the proposed integrated computer system.

By the end of February 1990, Globe was still contemplating H–P's proposal. In order to facilitate a sale, H–P prepared and presented a Benefits Analysis comparing Globe's current computing costs with the cost of the proposed computer system. The bottom-line of the Benefits Analysis was that Globe's computer costs would be reduced if it purchased or leased the proposed integrated computer system. Arden C. Sims Aff. at ¶ 3 & Ex. A.

On March 20, 1990, the Defendants forwarded written contracts to Globe, Goins Dep.Exs. 26, 27 & 28, and more than a month passed before Globe—allegedly prompted by Ryan's misrepresentations regarding imminent price increases—decided to purchase the computer system, Goins Dep. at 158. On April 30, 1990, Globe executed a Master Lease Agreement ("lease agreement") with H–P. Diane I. Homolak Aff.Ex.A. Less than a week later, Globe entered into four separate contracts with C–J for the sale and licensing of general ledger, accounts payable, accounts receivable, and payroll software. The total price of this software was $98,000. William W. Knapp. Aff.Ex. 1. On May 30, 1990, Globe also executed a Lease with Option to Purchase Equipment Schedule & Payment Agreement ("equipment schedule") with H–P, which incorporates the lease agreement as well as other attachments entitled "Additional Terms (ATL–04)," "Early Buyout Schedule dated 1–1–90," "HP Product Warranty, Form # E20, Rev. 900201," and "HP Software Terms, Form # E30, Rev. 890701(a)" (hereinafter all documents collectively referred to as "lease"). Homolak Aff. Exs. C, D, E, F & G. Notably, through its lease with H–P, Globe had financed its software purchases as well as its purchase of H–P hardware, peripheral equipment and related software. The total amount financed through H–P under the lease was approximately $539,000. John Lalley Dep.Ex. 9.

Globe's initial attempts to implement the integrated computer system were unsatisfactory. The payroll software would not function as Globe required, and the manufacturing software required over $160,000 of improvements in order to become fully operational. Faced with these problems, Globe met with C–J and H–P in November 1990, but the meeting failed to produce a solution. Consequently, on December 27, 1990, Globe mailed a letter to H–P rejecting the integrated computer system. Homolak Aff.Ex. J.

Despite Globe's rejection, the parties met several more times in an attempt to resolve Globe's difficulties with the computer system. As a result of these meetings, H–P and C–J agreed to provide Globe with additional services and/or products free of charge. H–P agreed to provide a Report Writer, a Cobol Compiler and an editor, and to reduce

Globe's payments under the lease [1] for the months of May 1991 through December 1991. *Id.* Ex. O. C–J agreed to provide a new version of its payroll software and supplementary training. *Id.* Ex.M. In addition, Globe agreed to purchase, and Q–CIM agreed to sell, a "Full System Upgrade" for an additional price of $22,500. *Id.* Ex.N. H–P also agreed to finance this acquisition as part of the lease.[2] Homolak Aff. at ¶ 23.

Notwithstanding the parties' efforts, implementation of the computer system continued to be problematic and, one year later, Globe was still utilizing its old computer system. After another round of meetings proved unsatisfactory, Globe informed the parties in May 1992 that it wished to terminate the project. On July 7, 1992, Globe brought suit against H–P, C–J and Q–CIM for breach of contract, breach of express warranty, breach of implied warranty, negligent misrepresentation and fraud.

Each Defendant timely answered and, in addition, H–P and Q–CIM counterclaimed. At present, H–P and C–J move for summary judgment. H–P seeks to obtain summary judgment on all claims set forth in Globe's complaint and on its counterclaims. C–J seeks summary judgment on all of Globe's claims or, in the alternative, on Globe's negligent misrepresentation and fraud claims, on all remaining claims with regard to the general ledger, accounts receivable and accounts payable software, and to enforce the limitations of warranties and damages with regard to the payroll software.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted only

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of establishing the absence of a genuine issue as to

any material fact. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The standard for summary judgment "mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact for trial). This is true where, for instance, the dispute turns only on a legal question and the moving party must prevail as a matter of law even if the court were to resolve all factual disputes in favor of the non-moving party. *See Ross v. Franzen,* 777 F.2d 1216, 1222 (7th Cir.1985); 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2725, at 79.

A summary judgment motion requires special treatment of the record. The Court "must view the evidence presented through the prism of the substantive evidentiary burden" and determine "whether reasonable jurors could find by a preponderance of the evidence that the Plaintiff is entitled to a verdict...." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Nonetheless, in making this determination the Court may not impinge upon the proper function of the jury. Therefore, all of "[t]he evidence of the non-movant party is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. DISCUSSION

At the outset, the Court notes that Globe has abandoned its claim of negligent misrepresentation. Pl.'s Mem. Opp'n at 3. Accord-

---

**1.** This modification to the lease agreement is embodied in lease Addendum III. *Id.* Ex. Q.

**2.** This transaction was formalized in lease Addendum IV. *Id.* Ex. S.

ingly, H–P and C–J are entitled to summary judgment on this claim. Count IV of the Complaint is hereby **DISMISSED.**

## A. H–P's Motion For Summary Judgment

### 1. Globe's Complaint

With regard to the remaining counts contained in Globe's complaint, H–P avers that it is entitled to summary judgment on several grounds. First, H–P argues that Counts I, II, III and V are barred by the agreements Globe entered into in the spring of 1991. Second, H–P asserts that the lease contains none of the provisions or warranties which are alleged in Counts I, II and III to have been violated. Finally, H–P maintains that the lease precludes Globe from asserting the fraud claim contained in Count V. Because a ruling in favor of H–P would warrant dismissal of the entire complaint, the Court shall first consider whether Globe waived its right to assert the breach and fraud claims by entering into certain agreements in spring of 1991.

#### a. Subsequent Agreements

According to H–P, Globe could have brought suit in December 1990, when it first sent a letter rejecting the integrated computer system. But instead of bringing suit, Globe met with H–P and, in effect, negotiated a settlement whereby H–P agreed to provide additional software and to amend the lease. Thus, argues H–P, Globe has already settled the claims which are the subject of the instant suit and, therefore, is precluded from asserting them anew.

█ In essence, H–P is arguing that the spring 1991 agreements constitute a "compromise and settlement." A compromise agreement is an agreement to settle a previously existing claim with a substituted performance.[3] *Corbin on Contracts* § 1278. A valid compromise and settlement bars all right of recovery on the previously existing claim. This is so because the compromise agreement is substituted for the claim, and the rights and liabilities of the parties are measured and limited by the terms of the agreement. The previously existing claim is extinguished by the compromise and settlement and, as a result, any subsequent litigation based upon it is barred. 15A Am Jur.2d, *Compromise and Settlement* § 24.

A compromise agreement is a contract and, as such, there must be mutual assent of the parties and consideration. *Id.* § 7. In the case at bar, H–P agreed to give additional software and amend the lease and, in exchange, Globe allegedly agreed to relinquish its right to sue H–P. Because software, lease amendments, and claim forbearance all constitute adequate consideration, the Court must consider whether there was mutual assent, that is, whether both H–P and Globe consented to the settlement.

It is undisputed that H–P expressly agreed to supply Globe with additional software and to modify the terms of the lease. Therefore, the determinative issue is whether Globe agreed to waive its right to institute legal proceedings. H–P never alleges that Globe expressly agreed to relinquish its right to institute legal proceedings; nor would the evidence support such an allegation. Rather, H–P apparently believes Globe implicitly agreed to forebear suit when it proceeded with the implementation of the computer system instead of insisting upon following through with the original rejection. The Court finds, however, that reasonable minds could differ as to whether Globe, by its actions, intended to enter into a settlement agreement, thereby waiving its right to bring suit on claims arising out of the original lease. Thus, there exists a genuine issue of material fact as to whether a settlement and compromise was effectuated between Globe and H–P and, as a result, summary judgment on this basis is not warranted.

█ As a corollary to compromise and settlement, H–P argues that Globe's continued performance under the lease constituted a waiver of its right to assert claims for

---

3. A compromise and settlement is similar to an accord and satisfaction, except that only a disputed or unliquidated claim can be the basis of a compromise and settlement while any claim—disputed or undisputed—can be discharged by an accord and satisfaction. Thus, a compromise and settlement is actually a type of an accord and satisfaction. *Corbin on Contracts* § 1278; 15A Am.Jur.2d, *Compromise and Settlement* § 3, at 774–75.

breach of contract and warranty. A waiver is a relinquishment of a known right, and it is well-settled under Ohio law that a party may waive the terms of a written contract. *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 198, 2 N.E.2d 501, 504 (1936). Terms may be waived expressly, in writing or orally, or impliedly by the acts and conduct of the parties. *Ohio Farmers Ins. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537 (1922). However, a waiver by implication cannot arise contrary to the intention of the parties unless the opposite party has been prejudicially misled or lulled into believing strict compliance is not required. *McMillen v. Willys Sales Corp.*, 118 Ohio App. 20, 193 N.E.2d 160, 164 (1962).

In the instant case, the facts do not show that Globe expressly waived its right to enforce the terms contained in lease and, as discussed above, reasonable minds could differ as to whether Globe—by its actions—intended to do so. Therefore, in order to obtain summary judgment on this issue, H-P must show that it was prejudicially misled or lulled into believing that Globe would not seek to enforce the terms of the lease.

Examples of instances where a party was found to have been misled or lulled by another party's conduct are contained in *Thomas-Bonner Co. v. Hooven, Owens & Rentschler Co.*, 284 F. 386 (6th Cir.1922), *English v. National Casualty Co.*, 138 Ohio St. 166, 34 N.E.2d 31 (1941), and *American Nursing Care Inc. v. Leisure*, 609 F.Supp. 419 (N.D.Ohio 1984). In each of these cases,[4] the waiving party did not inform the opposing party of the occurrence of a breach, but instead continued to perform under the contract as if there were no breach. This is to be contrasted with the facts in the instant case, where it is undisputed that Globe at-

tempted to reject the computer system because it allegedly did not conform to the terms of the lease. After receiving Globe's letter of rejection, H-P—along with the other Defendants—tried to placate Globe by agreeing to provide additional software and services which would ostensibly redress the problems with the computer system. When the additional software and services did not provide for satisfactory implementation of the computer system, Globe notified H-P accordingly. Under these circumstances, the Court cannot conclude, as a matter of law, that Globe's conduct lulled H-P into believing that the terms of the lease would not be enforced. Thus, summary judgment is not warranted on this basis as well.

■ Finally, H-P also asserts that, by continuing to perform under the lease, Globe waived the right to assert a claim for fraud. For support, H-P relies on the rule that "[t]he performance of an executory contract after knowledge of facts making it voidable on the ground of fraud in its procurement is a waiver of any right of action for damages for the fraud." *Eve v. Rutledge*, 73 Ohio App.3d 366, 369, 597 N.E.2d 194, 197 (Union County 1991) (quoting *Keller v. Citizens Discount Corp.*, 104 Ohio App. 206, 208, 144 N.E.2d 886, 887 (Hamilton County 1957)); *see also Baltimore & Ohio R.R. v. Jolly Brothers & Co.*, 71 Ohio St. 92, 72 N.E. 888 (1904).

On its face, this rule appears to preclude Globe's fraud claim because it is undisputed that Globe knew of H-P's allegedly fraudulent conduct in December 1990, but nevertheless continued to make payments under the lease. Notwithstanding, the Court believes that this rule is not applicable to situations where, as here, continued performance results from the parties' efforts to remedy the

4. In *Thomas-Bonner Co. v. Hooven, Owens & Rentschler Co.*, the Sixth Circuit found the right to enforce a contractual term had been waived when more than a year had elapsed between the time of the alleged breach and commencement of the lawsuit and, during that time, the partnership and its assignee, the corporation plaintiff, never informed the defendant of the breach and treated the contract as if in full force. 284 F. at 388, 389 & 392. In *English v. National Casualty Co.*, the Ohio Supreme Court ruled that, because the defendant insurance company had renewed plain-

tiff's insurance policy with full and actual knowledge that plaintiff was 65 years old, it had waived its right to enforce the clause which conditioned coverage on plaintiff being less than 65. 138 Ohio St. at 169-71, 34 N.E.2d at 33-34. And in *American Nursing Care Inc. v. Leisure*, the plaintiffs were held to have waived their right to assert a claim for breach of contract when they continued to do business with defendant for several years after the initial breach and continued to recruit others into the business. 609 F.Supp. at 429.

alleged fraud. To hold otherwise would discourage the resolution of disputes outside the courtroom; a defrauded party would be better advised to institute suit rather than attempt to obtain redress from the opposing party because, by so doing, the defrauded party may waive its right to assert a fraud claim.

The Court's interpretation of the rule is not contrary to Ohio precedent. In *Baltimore & Ohio R.R. v. Jolly Brothers & Co.*, 71 Ohio St. 92, 72 N.E. 888, the Ohio Supreme Court adopted and applied the rule, stating:

> Here the [fraud was] known within a week or two after the commencement of the work [under the contract], and the plaintiff could not go on with the work, accept payment at the prices stipulated in the contract, and then, when it proved a losing venture, quit and sue for damages on the ground that their loss was caused not by themselves in electing to go on with the work but by the false representations of the defendant.

*Id.* at 129, 72 N.E. at 895; *see also Eve v. Rutledge*, 73 Ohio App.3d 366, 597 N.E.2d 194, (the court applied the rule where the defendant discovered the alleged fraud in November 1984, continued to perform under the contract until October 1987 without informing plaintiff of his discovery, and raised the claim of fraud only after plaintiff brought suit under the contract). The rule has never been applied to a situation similar to the one here where, at the time of discovery, Globe notified H–P of its intent to reject the computer system but then continued to perform under the contract while attempting to remedy the problems which prompted the rejection.

In sum, because the Court believes there exists valid policy reasons for not applying the rule in the instant case, and because the Court is not constrained by precedent to do so, the Court declines to find that Globe has waived its right to assert a claim for fraud by virtue of its continued performance under the lease. Accordingly, summary judgment on Count V will not be granted on this basis.

**b. Lease Devoid of Provisions and Warranties**

Paragraph 7 of the lease agreement states: Lessee shall have the benefit of applicable manufacturer's warranties [5] covering the Equipment which are normally furnished to purchases of identical equipment manufactured by Lessor. THE WARRANTY REFERRED TO ABOVE IS EXCLUSIVE AND NO OTHER WARRANTY WHETHER WRITTEN OR ORAL IS EXPRESSED OR IMPLIED. LESSOR SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

Homolak Aff.Ex. A. Nowhere in the complaint, however, does Globe allege that H–P breached the "applicable manufacturer's warranties cover the Equipment." Furthermore, it is undisputed that the provisions and warranties alleged in Counts I, II and III [6] either are not contained or are disclaimed in the lease. Consequently, H–P maintains it is entitled to summary judgment on Counts I,

---

5. The "applicable manufacturer warranties" is a warranty against defects in materials and workmanship of H–P products. Homolak Aff.Ex. F.

6. In Count I, Globe claims that "[t]he essential purpose of Defendants' [computer] System was to provide Plaintiff Globe with an integrated system that met all of Plaintiff Globe's existing management information needs plus additional functions and did not cost more on an average monthly basis than Plaintiff Globe's existing system." Compl.Ct. I. Globe then goes on to allege that "[t]he failure of the essential purpose of Defendants' System and Defendants' failure to perform in accordance with its obligations constitute breaches of contract." *Id.*

In Count II, it is alleged that Defendants made and breached the following express warranties:

"Defendants' System would be complete and replace all of Plaintiff Globe's existing computer functions requested, for the same price over the term of the proposed lease as the services that Plaintiff Globe was currently buying"; "The Defendants' System would replace Plaintiff Globe's existing system and would operate without any problems"; "Defendants' System would be fully operational without a need for a MIS professional"; "Defendants' System would allow Plaintiff Globe to invoice its customers as it has always done"; and "Defendants' System, including all software manuals, would be complete." Compl. ¶ 14; Pl.'s Mem.Opp'n at 50.

In Count III, Globe alleges that Defendants breached the implied warranty of fitness for a particular purpose.

II and III because the lease contains none of the provisions or warranties alleged therein.

In response, Globe contends that summary judgment is inappropriate because the lease agreement, the equipment schedule, the attachments thereto, and the four addenda which comprise the lease do not constitute a complete integration of the parties' agreement. Rather, Globe asserts that prior oral and written representations, including the December 1989 Sales Proposal and the March 1990 Benefits Analysis, must be considered as part of the contract between the parties.

An integrated contract is one that expresses the complete and final agreement between the parties as to one or more of its terms. The determination that a contract is integrated is significant because, under California law,[7] the parol evidence rule works to prohibit the introduction of any extrinsic evidence to vary, alter or add to the terms of an integrated contract. *Alling v. Universal Mfg. Corp.*, 5 Cal.App.4th 1412, 1433, 7 Cal.Rptr.2d 718, 731 (Cal.Ct.App. 1992). The parol evidence rule is codified at § 1856 of the California Code of Civil Procedure, which states in relevant part:

(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

(b) The terms set forth in a writing described by subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement.

Code Civ.Proc. § 1856. Thus, under both common and statutory law, extrinsic evidence can never contradict the terms of a contract and, if the contract is fully integrated, extrinsic evidence can not be used to explain or supplement the terms.

The question of whether a contract is integrated is one of law. Code Civ.Pro. § 1856(d); *FPI Development, Inc. v. Nakashima*, 231 Cal.App.3d 367, 282 Cal.Rptr. 508 (Cal.Ct.App.1991). "The crucial issue is whether the parties *intended* the written instrument to serve as the exclusive embodiment of their agreement." *Banco Do Brasil, S.A. v. Latian, Inc.*, 234 Cal.App.3d 973, 1001, 285 Cal.Rptr. 870, 886 (Cal.Ct.App. 1991) (emphasis in original) (citing *Salyer Grain & Milling Co. v. Henson*, 13 Cal. App.3d 493, 91 Cal.Rptr. 847 (Cal.Ct.App. 1970)). To resolve this issue, the Court should first look to the written contract itself; an integration clause constitutes persuasive, if not controlling, evidence of the parties' intent to consider the contract as integrated. *Slivinsky v. Watkins–Johnson Co.*, 221 Cal. App.3d 799, 270 Cal.Rptr. 585 (Cal.Ct.App. 1990); *see also Banco Do Brasil*, 234 Cal. App.3d at 1001, 285 Cal.Rptr. at 886. The Court should also consider the circumstances surrounding the contract, including prior negotiations between the parties. *Id.* Furthermore, the terms of the collateral agreement should be considered, but only to the extent that they do not contradict the express terms of the written contract. *Id.*

Upon examining the lease agreement, equipment schedule, attachments thereto, and the four addenda, the Court has little doubt that the documents are complete and were intended by the parties to be the complete expression of their agreement. Significantly, the lease agreement contains an integration clause which provides in relevant part: "This Agreement, together with any Equipment Schedules executed hereunder, and any referenced attachments shall constitute the entire understanding between the parties and supersedes any previous communications, representations, or agreements whether verbal or written." Homolak Aff. Ex.A., at ¶ 23. The language of this clause is unequivocal, and the Court fails to see how the parties could have more clearly expressed their intent to consider the documents to be a complete and final expression

---

7. The lease agreement provides that "[t]his Agreement and any Equipment Schedule entered into hereunder shall be governed and construed in accordance with the laws of the state of Cali-

fornia." Homolak Aff.Ex. A. The Court therefore will interpret the agreement between the parties pursuant to the law of that State.

of their agreement. Notwithstanding, Globe now suggests that it either misread the documents or was ignorant of their contents and, therefore, the documents are not indicative of its intent. As the Supreme Court has observed, however, "[i]t will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875). In the instant case, Globe had ample time to review the lease agreement and other documents; Globe will not now be heard to declare that it never intended to assent to their plain and ordinary meaning.

With regard to the circumstances surrounding the parties' agreement, the Court notes that Globe cannot be characterized as an unsophisticated purchaser having little experience with commercial contracts. *Cf. Sierra Diesel Injection Service, Inc. v. Burroughs Corp.*, 890 F.2d 108 (9th Cir.1989) (notwithstanding integration clause, contract not integrated when buyer was unsophisticated and had little knowledge of computers or of contract terms). Rather, the evidence shows that both Globe and H–P dealt with each other in a commercial setting and enjoyed relatively equal bargaining power.

Last, the prior oral and written representations alleged to have been made by H–P, including those contained in the Sales Proposal and Benefits Analysis, directly contradict the terms of the written agreement. For example, the lease agreement purports to disclaim the implied warranty of fitness for a particular purpose and to limit express warranties to the "applicable manufacturer's warranties covering the equipment," and an attachment to the equipment schedule also disclaims all warranties, express or implied, covering Q–CIM's and C–J's software. Homolak Aff.Ex.D. It is simply not possible to reconcile Globe's claim regarding the presence of representations and warranties in the parties' agreement with the provisions of the written documents which disclaim any such representations and warranties.[8]

In sum, the Court concludes that the lease agreement, the equipment schedule and attachments thereto, and the four addenda constitute the complete and final agreement between Globe and H–P. As a result, the parol evidence rule precludes Globe from introducing extrinsic evidence that would alter, vary, or add to the contents of these documents. Summary judgment therefore is warranted to the extent that Globe's claims attempt to hold H–P liable for breaching undertakings that are not expressly made in the written agreement. The Court has carefully read the complaint and the terms of the written agreement, and finds there is no basis for the breaches of contract and express warranties claims. In these claims Globe does not allege that H–P breached provisions and warranties contained in the written agreement, but instead Globe alleges breaches of provisions and warranties that are extrinsic to the agreement. Accordingly, H–P is entitled to summary judgment on Counts I and II, and they are hereby **DISMISSED**.

With regard to Count III, the controlling question is, of course, not whether the implied warranty of fitness for a particular purpose was expressly contained in the agreement, but rather whether such warranty was properly disclaimed. Section 2316(2) of the California Commercial Code provides in pertinent part: "to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." In the instant case, the implied warranty disclaimer contained in paragraph 7 satisfies these criteria. The disclaimer is written on the first page of the lease agreement and, because it is in capital letters and large print, it is conspicuous. Homolak Aff.Ex.A. Thus, because H–P properly disclaimed the implied warranty of fitness for a particular purpose, it is entitled to summary judgment on Count III. Count III is **DISMISSED**.

**c. Parties' Written Agreement Bars Fraud Claim**

Last, H–P maintains that the lease precludes Globe from asserting the

---

8. In its complaint, Globe asserts that the disclaimers contained in these documents are unconscionable. However, Globe failed to raise this argument in its responsive pleadings and, therefore, the Court considers it to have been abandoned.

fraud claim contained in Count V. More precisely, H–P appears to argue that, under California law,[9] the parol evidence rule prohibits Globe from introducing evidence to establish its fraud claim. Although the parol evidence rule generally permits the introduction of extrinsic evidence to prove fraud, Cal.Civ.Code § 1856(g), the California Supreme Court has held that extrinsic evidence may not be introduced to prove "promissory fraud"[10] unless the false promise is independent of or consistent with the written instrument. *Bank of America Nat'l Trust & Savings Assn. v. Pendergrass*, 4 Cal.2d 258, 48 P.2d 659 (1935). Thus, when a party asserts a claim for promissory fraud under California law, the parol evidence rule bars proof of any fraudulent promise which is directly at variance with the terms of the written agreement.

In the instant case, H–P fails to specify a fraudulent promise sought to be introduced by Globe which is directly at variance with the terms of the written agreement. Rather, H–P apparently argues that, by virtue of the integration clause, any fraudulent promise would be at variance with the written agreement because it was not contained therein. The Court disagrees. To accept H–P's argument

> would ... nullify Code of Civil Procedure section 1856, subdivision (g), the fraud exception to the parol evidence rule, which specifically allows evidence of representations which contradict or vary the terms of a contract in order to establish fraud. The integration clause has no effect on the fraud exception to that rule. [2 Bernard E. Witkin, *California Evidence* § 972, at 918–19.] "Such evidence does not contradict the terms of an effective integration since it shows that the purported instrument has no legal effect." [*Id.* § 997, at 944.]

*Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal.App.3d 388, 424, 264 Cal.Rptr. 779, 799 (Cal.Ct.App.1989). H–P therefore has failed to establish that it is entitled to summary judgment on Count V of the complaint.

As a final matter, the Court notes that much of Globe's arguments in opposition to H–P's motion for summary judgment are premised on Globe's assertion that it contracted with H–P to purchase an integrated computer system. For example, Globe argues that the disclaimer of implied and express warranties does not apply to the integrated computer system and that, in any event, H–P's limited warranty should be construed to apply to the integrated computer system as a whole and not just to H–P products. As a result, Globe's breach of warranty claim would survive the motion for summary judgment.

The Court has considered these arguments, and finds them to be without merit. Despite Globe's protestations to the contrary, it did not enter into a contract with H–P to purchase an integrated computer system, but instead entered into separate contracts with each Defendant to purchase a particular component. The Court simply will not, under the pretense of contract interpretation, distort the plain and ordinary meaning of the written agreement which exists between H–P and Globe.

## 2. H–P's Counterclaims

In addition to moving for summary judgment on Globe's claims, H–P moves for summary judgment on its counterclaims, wherein it seeks to recover all amounts due and owing under the parties' written agreement. Specifically, H–P claims it is entitled to the following amounts under various provisions of the lease: $752,056.80 in accelerated rental payments; $146,651.07 plus an additional $370.88 per day from and including July 1, 1993 in late charges; H–P's costs in

---

9. The choice of law clause contained in paragraph 21 of the lease agreement applies not only to Globe's contract claims, but also to its tort claim. *See Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1139–40 (6th Cir.) *cert. den.*, 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991); *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir.1993).

10. "Promissory fraud" is a promise made without any intention of performing it. Cal.Civ.Code § 1572(4); *Coast Bank v. Holmes*, 19 Cal.App.3d 581, 97 Cal.Rptr. 30 (1971).

enforcing the lease; $6,363.09 in unpaid support and maintenance charges; and prejudgment interest at the rate of 10% per annum from July 7, 1992 on the unpaid support and maintenance charges.

Under Addendum IV to the lease, Globe agreed to pay H–P the sum of $6,177.37 per month from May 1, 1991 to December 1, 1991 and, thereafter, the sum of $13,673.76 per month from January 1, 1992 to August 1, 1997. Homolak Aff.Ex.S. Under paragraph 2 of the lease agreement and under Addendum IV, Globe's obligation to make these payments is unconditional. *Id.* Exs. A, S. Moreover, paragraph 19 of the lease agreement provides in relevant part:

> In the event Lessee fails to make any payment of any Rental or other charges due hereunder for a period of ten (10) days from the date due ... Lessor may, at its option, do any one or more of the following: (i) declare all sums due and to become due under this Agreement and the applicable Equipment Schedule immediately due and payable. ...

*Id.* Ex. A.

Although Globe made rental payments through January 1992, it is undisputed that Globe failed to make any payments thereafter. Larry Jones Aff. at ¶ 4, 5. Thus Globe is in default on all rental payments which became due on and after February 1, 1992. Also undisputed is the fact that H–P has exercised its rights under paragraph 19 and has declared all payments, totaling $752.056.80, immediately due and payable. *Id.* Therefore, the Court finds, as a matter of law, that H–P is entitled to recovery unpaid rentals in the amount of $752,056.80.

■ With regard to H–P's claim for late charges, paragraph 2 of the lease agreement provides: "To the extent permitted by applicable law, any Rental or other payment which remains overdue for more than ten (10) days shall be subject to a late charge equal to one and one-half percent (1½%) per month of the amount past due." Homolak Aff.Ex.A. Because such charges are not forbidden under California law, *cf. Southwest*

*Concrete Products v. Gosh Constr. Corp.,* 51 Cal.3d 701, 798 P.2d 1247, 274 Cal.Rptr. 404 (1990), the Court finds as a matter of law that H–P is entitled to monthly late charges equal to one and one-half percent of $752,-056.80. Such charges began accruing in May 1992, and will continue to accrue until Globe pays H–P $752,056.80.

■ With regard to H–P's claim for costs incurred in enforcing the lease, paragraph 19 of the lease agreement states in part: "If any action is brought by either party to enforce this Agreement or any Equipment Schedule entered into hereunder or to protect its interest in the Equipment, the losing party agrees to pay the costs thereof including reasonable attorney's fees and other costs of collection." Homolak Aff.Ex.A. Pursuant to this provision, H–P requests an award of reasonable attorney's fees and costs in obtaining judgment for the rental payments and late charges due under the agreement. Because such a provision is valid and enforceable under California law, *see* Cal.Civ. Code § 1717, the Court finds as a matter of law that H–P is entitled to recover reasonable attorney's fees and costs, in an amount to be determined upon application to the Court.

■ Globe had also entered agreements with H–P for the maintenance and support of H–P hardware and software. Gregory D. Stephens Dep. at 343. Globe canceled these agreements in May 1992. *Id.* at 346–47. At the time of cancellation, Globe had not paid H–P for maintenance and support services rendered during the months of February, March, April, and May 1992. The total amount of services provided during these months is $6,363.09. Jones Aff. at ¶ 7 & Ex. B. Because Globe does not dispute any of the above, the Court concludes that H–P is entitled to recover the unpaid fees for maintenance and support totalling $6,363.09. In addition, H–P seeks prejudgment interest on the unpaid fees. Ohio Revised Code § 1343.03 [11] provides that H–P is entitled to recover 10% per annum, commencing from the day the cause of action accrued to the

---

11. As far as the Court can discern, the maintenance and support agreements do not contain a choice of law provision. Accordingly, the Court shall apply Ohio law.

date upon which the money is paid. Because Globe does not contest H–P's assertion that the cause of action accrued on July 7, 1992, the Court finds H–P entitled to prejudgment interest on the $6,363.09 in unpaid maintenance and support charges at the rate of 10% per annum from July 7, 1992 until paid.

## B. C–J's Motion For Summary Judgment

C–J moves for summary judgment in its favor on all the remaining [12] claims set forth in Globe's complaint or, in the alternative, on Counts I, II and III with regard to the general ledger, accounts receivable and accounts payable software, on Count V in its entirety, and to enforce the limitation of warranties and damages with regard to the payroll software.

■ Notably, the provisions and warranties alleged to have been violated by C–J in Counts I and II are not contained in the software license and support agreements [13] ("agreement") entered into by Globe and C–J.[14] Rather, such provisions and warranties were allegedly made prior to the execution of the agreement between Globe and C–J. Thus, as with H–P's motion, the question before the Court is whether Globe may introduce extrinsic evidence to establish the existence of provisions and warranties which C–J allegedly made and then breached.

■ The parol evidence rule, as codified under Florida law,[15] states in relevant part:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

. . . .

(2) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Fla.Stat. § 672.202. Thus, under Florida law, extrinsic evidence may neither be used to contradict the terms of a contract, nor be used to explain or supplement the terms of an integrated contract.

In the instant case, the agreement between the Globe and C–J contains an integration clause which states: "This Agreement constitutes the entire agreement between the parties hereto and supercedes all prior understandings and agreements and shall not be modified or altered except by written instrument duly executed by both parties." Knapp Aff.Exs. 1, 2. Because of this clause, and because of the unambiguous language contained in the agreement, the Court concludes as a matter of law that the agreement is fully integrated and represents the complete and final agreement between the parties. *See Earman Oil Co. v. Burroughs Corp.*, 625 F.2d 1291, 1298 (5th Cir.1980) (applying Florida law); *Molinet v. MAI Basic Four, Inc.*, 19 U.C.C. Rep.Serv.2d (Callaghan) 401, 408–09, 1992 WL 454480 (S.D.Fla.1992). Globe therefore cannot introduce extrinsic evidence in order to establish its breach claims. Accordingly, because the Court has already determined that the provisions and representations alleged in Counts I and II are extrinsic

---

**12.** As discussed above, Globe has abandoned its negligent misrepresentation claim.

**13.** In May 1990, Globe executed agreements for the accounts payable, accounts receivable, general ledger and payroll software. Knapp Aff.Ex. 1. In the fall of 1991, Globe traded in their existing payroll software and, in exchange, received newly released payroll software. At that time, Globe and C–J entered into a second software license and support agreement for the payroll software. *Id.* Ex. 2.

**14.** With regard to Count I, the agreement contains none of the contractual provisions alleged

therein. With regard to Count II, section 6.3 of the agreement makes clear that the only warranties made by C–J are those contained in the agreement, which are the Warranty of Title as set forth in section 6.1, and the Warranty of Performance as set forth in section 6.2. Globe has failed to allege that C–J breached either warranty.

**15.** Section 10.8 of the agreement provides that "[t]his Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida. . . ." Knapp Aff.Ex. 1.

to the agreement, C–J is entitled to summary judgment on these claims and they are hereby **DISMISSED**.

With regard to Count III, section 6.3 of the agreement purports to disclaim, among others, the implied warranty of fitness for a particular purpose: "LIMITATION OF LIABILITY. EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THERE ARE NO OTHER WARRANTIES AND CONDITIONS, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE." Knapp Aff.Exs. 1, 2. The language in section 6.3 clearly comports with Florida law, which provides that "to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous." Fla.Stat. § 672.316(2). Thus, C–J properly disclaimed the implied warranty of fitness for a particular purpose and is entitled to summary judgment on Count III. Count III is **DISMISSED**.

To prevail on a claim of fraud under Florida law,[16] the following elements must be established by a preponderance of the evidence:

> (1) a false representation as to a material fact, (2) the defendant knew or should have known that the representation was false, or that the defendant made the representation recklessly without knowledge as to its truth or falsity, (3) the plaintiff reasonably relied upon the representations, (4) the plaintiff incurred foreseeable damages, (5) caused by the defendant's representations.

*Tew v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1551, 1564 (S.D.Fla.1990). C–J asserts that summary judgment is warranted because Globe has failed to come forward with affirmative evidence showing that C–J intentionally or recklessly made misrepresentations.

The only evidence of an oral misrepresentation attributed to C–J is contained in an affidavit by John Lally, wherein he alleges that in February 1991, C–J employee Bill Knapp informed him that C–J's new payroll software would perform all the required payroll functions for Globe. Lally Aff. ¶ 8. Globe has failed to present evidence showing that, at the time he made the representation, Bill Knapp knew or should have known that it was false, or that Bill Knapp made the representation recklessly without knowledge as to its truth or falsity. Further, of the written misrepresentations attributed to C–J, Globe has failed to present any evidence which shows that C–J made the representations with the knowledge that they were false or with reckless disregard as to their truth or falsity. Because Globe cannot rely on mere statements contained in the pleadings, but rather must come forward and identify affirmative evidence which supports its claim that C–J intentionally or reckless made misrepresentations, Globe has failed to sustain its burden in responding to C–J's motion for summary judgment with regard to Count V. Accordingly, Count V is hereby **DISMISSED**.

## IV. CONCLUSION

Upon consideration and being duly advised, the Court finds Defendant H–P's motion for summary judgment to be partially meritorious, and it is, therefore, **GRANTED** with respect to Counts I, II, III and IV of Plaintiff's complaint but **DENIED** with respect to Count V, and **GRANTED** with respect to H–P's counterclaims. Upon further consideration, the Court finds Defendant C–J's motion for summary judgment to be meritorious, and it is, therefore, **GRANTED**.

**IT IS SO ORDERED.**

---

**16.** *See* footnote 8, *supra.*